WILLIAM Z. BROWN, Respondent, v. THE TOWN OF CANTON, Appellant.

| 4L | 409 |
| 75 | ¹214 |

(GENERAL TERM, THIRD DEPARTMENT, JUNE, 1871.)

Town certificates of indebtedness issued in January, 1864, for bounty to volunteers, became, by the provisions of section 1, chapter 8, Laws of 1864, debts of the town, upon which an action lies against it. (LEARNED, J., dissenting.)

Where the plaintiff, on enlisting and being mustered into service as a soldier, directed certain town bounty certificates to which he was thereby entitled to be delivered and paid to his father for the latter's benefit, and the father sold them, to a purchaser who afterward collected them from the town,—*Held*, the plaintiff being, at the time he gave the directions for delivery, a minor, that he still retained his property in the certificates, and might sue the town and recover upon them.

Bounty offered to induce volunteering is no part of the earnings to which, in case of a minor, the father would have a right.

THIS was an appeal by the defendants from a judgment in favor of the plaintiff. The facts appear in the opinion of the court.

*Foote & James,* for the respondent.

*W. C. Cook,* for the appellant.

Present—POTTER, P. J., PARKER and LEARNED, JJ.

By the Court, PARKER, J. This action was brought to recover the amount of three certificates of indebtedness for $100 each, dated on the first day of January, 1864, payable on the face thereof, to the plaintiff or to his order, upon their production and surrender respectively to the supervisor of the town, on the first day of March, 1865, 1866 and 1867, with interest.

The certificates were given to secure $300, bounty money, to plaintiff, then a minor under twenty-one years of age, who volunteered to assist in filling up the quota of the town of Canton, and was, on the 28th of December, 1863, mustered

into the service of the United States, and credited to the town of Canton, under the call of the president for 300,000 men. The defendant pleaded and offered to show that the plaintiff directed the supervisor of Canton to deliver the certificates, when made out and executed, to William S. Brown, his father, and, when due, to pay them to him; that they were so delivered; that the said William S. Brown sold and transferred them to one Woodbridge, who paid the amount thereof to him, and that Woodbridge presented them as they became due to the supervisor of the town of Canton for payment, and the same were thereupon paid to said Woodbridge; also that the plaintiff, when he volunteered, was under sixteen years of age, and residing with his father, the said William S. Brown; that said William S. Brown consented that he might enlist and be mustered into the military service of the United States, and be credited to the quota of Canton, upon condition that he, said W. S. B., should have the bounty which the town was paying, and that the certificates should be delivered to him for his own use, which was agreed to by the plaintiff and the defendant; and that the certificates in question were, in pursuance of such arrangement, delivered to him, for his own use; that he subsequently sold and transferred them to one Woodbridge, who, when they became due, presented them to the supervisor of the town of Canton for payment, and they were thereupon fully paid to said Woodbridge.

Upon the trial, the judge at the circuit held that these facts so pleaded and offered to be proved did not constitute a defence, and excluded the evidence, to which defendant excepted.

The defendant also moved for a nonsuit on the ground that no cause of action was set forth *against the town*, in the complaint, for the reason that it did not appear that the supervisor, when payment of the certificate was demanded of him on behalf of plaintiff, had any funds in his hands out of which payment could be made; also, that it did not appear that the plaintiff ever presented his claim to the board of

town auditors of the town of Canton; also, that no action for the demand in question lay against the town. The motion was denied, and defendant excepted.

A verdict was rendered, by direction of the court, for the plaintiff, for $450, the amount of the certificates with interest, and defendant appeals from the judgment.

In regard to the right to maintain the action against the town, I think the decision of the court at the circuit was correct.

It is by virtue of the act of February 9, 1864 (Laws of 1864, chapter 8, § 1), that the certificates are valid. By this statute it is provided that a liability incurred for bounty, as this was, shall be "a debt against such town, to be paid with interest, and when a certificate shall have been issued     *     *     * indicating the amount so     *     *     *     incurred, such *certificate* shall be evidence of the amount of such debt, and of the *time from which interest is payable* thereon, and of the *persons* to whom the same is payable; and *if no sufficient* bond, note, receipt, *certificate*, scrip or instrument *shall have been given* or issued as aforesaid, *then* the claim for the     *     *     *     liability incurred shall be audited by the board of town auditors of said town."

It clearly appears from this statute, that the *certificate* in question supersedes the certificate of the board of town auditors, which they are required to make in regard to claims allowed by them, "specifying the name of the person in whose name the account is drawn, the nature of the demand, and the amount allowed." Where the certificate is given under the act above cited, it shows all that the certificate of the auditors is required to show, and no submission of the claim to them is necessary.

The case of *Bell* v. *The Town of Esopus* (49 Barb., 506), upon which the defendant relies, was a case where the plaintiff had a claim for services against the town, which it was necessary to submit to the board of town auditors; and it was well held in analogy to the cases of similar claims against a county in which it was estab-

lished by the cases cited, that the statute required the claim to be first passed upon by the board of supervisors, and that no action at law would lie against the county; that in that case no action could be maintained, and that, as in the cases cited, it might become a proper case for a mandamus. But that case and the cases on which its decision rests, holding that the statute had, in the case of counties, established the board of supervisors as the tribunal to pass upon the claims, and in the case of towns the board of town auditors, can have no application to this case, in which the statute under which the claim arises exempts it from the adjudication of the auditors.

The statute makes it a debt against the town, and the con sequent obligation rests upon the town to pay it. By statute each town is a body corporate, having capacity " to sue and *be sued* in the manner prescribed by the laws of this State." (1 R. S., 337, § 1, sub. 1.) Being under legal obligation to pay the certificates, which were not subject to be passed upon by the board of town auditors, the town was liable to be sued upon the certificates and to a judgment thereon, which, in the language of the statute (1 R. S., 357, § 8) " shall be a town charge; and when levied and collected, shall be paid to the person to whom the same shall have been adjudged." In *ex parte* Lynch (2 Hill, 46), which was an application for a mandamus to the supervisors of New York to compel them to pay the relator's salary, it was held that a mandamus did not lie, because there was a plain and adequate remedy by action. In a note to that case, so much of the opinion of NELSON, Ch. J., given upon a former application (and upon which the then application was decided), as related to the point in question, is set forth. The chief justice says : " The fifth section of the act of 1840 (Sess. Laws 1840, p. 258) provides that the associate judges shall receive each a yearly salary of $2,000, to be paid by the common council of the city out of the city treasury in quarterly payments. Here. is a legal duty, enjoined by competent authority, which the corporation are bound to discharge. It is as binding

upon them as if entered into under the corporation seal. Full consideration has been rendered in the services of the officers for the liability thus imposed. An action on the case or of assumpsit will lie for the neglect of a corporate duty."

I do not see why the same rule does not apply in this case to this defendant. It is in its corporate character that defendant is liable upon the certificate, which the statute makes evidence of a debt against the town, without the certificate of the auditors. The town has, by statute, capacity to sue and be sued, in its name as a town. Moreover, here is a controversy between the plaintiff and the town, arising out of the facts in relation to the certificate above referred to; and it is provided by statute that "whenever any controversy or cause of action shall exist between any town and an individual, such proceedings shall be had either at law or in equity for the purpose of trying and finally settling such controversy, and the same shall be conducted in like manner, and the judgment or decree therein shall have the like effect as in *other suits* and proceedings of a similar kind, between individuals and corporations." ( 1 R. S., 356, § 1.) I can see no reason for excluding this case from the operation of this statute, and I think the action is well brought against the town.

As to the defence set up in the answer, which the defendant offered to prove, I think, too, the court decided correctly in excluding the offered evidence.

The fact that the supervisor of the town delivered the certificates to the father of the plaintiff by his direction, that the father sold them to Woodbridge, who presented them for payment, and that they were paid to him, does not, I think (plaintiff being an infant at the time of giving such direction) constitute a defence as against him. The certificates, notwithstanding such direction, were still the property of the plaintiff, and the defendant had no right to pay them to any one else. Plaintiff being an infant, could not make his father or Woodbridge his agent to receive the money for him, and the payment to Woodbridge was made by defendant in its own wrong, and furnishes no excuse, as against the plaintiff, for a

refusal to pay him.  (*Fonda* v.  *Van Horne*, 15 Wend., 631;
*Stafford* v.  *Roof*, 9 Cow., 626.)

Even an instrument under seal, duly delivered by an infant,
if it delegates a naked authority, is void.  (*Bool* v.  *Mix*, 17
Wend., 130, 131.)   There can be no doubt, I think, that the
direction by plaintiff to the supervisor to deliver the certifi-
cates to his father, and when due to pay them to him was
void, and cannot avail the defendant, as authority, to pay the
money to Woodbridge.

The other defence also was, I think, properly overruled.
The certificates were issued, for the bounty which the
town had offered for volunteers.   This belonged absolutely
to the volunteer, whether an infant or of full age.  (*Caughey* v.
*Smith*, 50 Barb., 351.)   The agreement of the infant son,
that his father should have the bounty, was equally void with
his direction to the town authorities, to deliver the certifi-
cates to his father and pay them to him.  (See authorities
above cited, also Tyler on Infancy &c., 41–48.)   It can
make no difference in this case, whether the agreement of
the infant is to be considered void or voidable ; for the plain-
tiff, after coming of age, avoided it, as he had a right to do,
if it was voidable merely.

The fact that plaintiff was, at the time of enlistment, under
sixteen years of age does not give any effect to the agreement
in favor of defendant.   Granting that the consent of the
father was necessary to entitle the town to put the plaintiff
in upon its quota, the bounty, for which the certificates
were given, was no less the plaintiff's from that circumstance,
and no arrangement between him (an infant), his father and
the town, could take away his right to it.   Such arrangement
would, as to him, be either void or voidable.   In either
case, he (being of age when he demanded it) has avoided
the contract by which the town gave over the certificates to
the father, and is now entitled to receive the amount of the
bounty and interest, of which the certificates were the evi-
dence.

Brown v. The Town of Canton.

There is no equity in favor of the defendant. The bounty was offered to the volunteer, to induce him to offer himself, for the service of the country. It was no part of his wages, to which the father had a right as master, and defendant's counsel is mistaken in considering it the price of his services to which the father was legally entitled. The question is not, here, in reference to the price of plaintiff's services. This was to be paid by the government, and was wholly independent of the bounty. True, if the plaintiff had been of full age, he might, by contract, have entitled his father to his bounty; but, being an infant, he could make no such contract. The defendant was cognizant of all the facts, and can claim no immunity from want of notice. The payment of the money to Woodbridge was with full notice of plaintiff's right to it, and does not at all affect plaintiff's claim to it, which, as defendant must be deemed to have known, was never divested.

I think the judgment must be affirmed with costs.

POTTER, J., concurred. LEARNED, J., dissented.

LEARNED, J. (dissenting.) This is an action on three certificates of indebtedness, dated January 1, 1864, payable to the plaintiff or his order, on their production and surrender to the supervisor of the defendant on the first day of March, 1865, 1866 and 1867 respectively, with interest. They were issued on or before the date thereof by the supervisor and town clerk of Canton, pursuant to a vote of a town meeting held December 12, 1863, by which a bounty, to the amount of $300, was offered to volunteers.

It is averred, and not disputed, that, at the time of issuing these certificates, and in consideration thereof, the plaintiff, then being under twenty-one years of age, volunteered and was mustered into service; that afterward, on the 9th day of February, 1864, the legislature passed an act (chap. 8, Sess. Laws, 1864) legalizing the proceedings of this town meeting, and declaring the liabilities incurred and certificates issued to be a debt against the town.

Upon the trial the defendant offered to prove, in substance, that, at the time when the defendant volunteered, it was agreed on between him and his father, William S. Brown, with whom he was residing, that, if the father would consent to such volunteering, he should receive for himself the bounty ; that, thereupon, at that time, and in pursuance of that agreement, and by direction of the plaintiff, the supervisor of Canton delivered these certificates to said William S. Brown, the father; that afterward, with the knowledge and consent of the plaintiff, and by his direction, the father transferred them to one Woodbridge, and received the amount thereof; that they were presented by said Woodbridge, when they became due, to the supervisor, and were paid and canceled ; that the plaintiff afterward, without consent of the defendant, obtained possession of the certificates, and demanded payment of them.

There are two questions which arise; the one, as to the right to bring such an action against a town; the other, as to the effect of the payment to the assignee, Woodbridge. The judge who tried the case decided both of these questions in favor of the plaintiff, and directed a verdict for the amount of the certificates.

1st. Can an action like this be maintained, or must the claimant present his demand to the board of town audit ?

In the case of *Brady* v. *The Supervisors of New York* (2 Sandf. S. C., 460), affirmed by the Court of Appeals (10 N. Y., 260), for the reasons given by the court below, the plaintiff sued the supervisors for services rendered to the county. By 1 Revised Statutes, marg. p. 384, section one of title three, entitled " Of legal proceedings in favor of and against counties," it is provided that, whenever any controversy or cause of action shall exist between a county and an individual, such proceedings shall be had at law or in equity for trying and settling the controversy, &c., as in other suits between individuals and corporations. And by 1 Revised Statutes, marg. p. 364, section one of title one, it is expressly provided that each county, as a body corporate, has capacity

Brown *v.* The Town of Canton.

to sue and be sued.   The plaintiff in the case above cited claimed that, by these and other provisions, he had a right to bring an action against the county, in the name of the supervisors, to recover for his services.   But Chief Justice OAKLEY, on a very full examination of the subject, held that this provision was intended to give " a remedy against the county for such causes, *and no other*, as could not be presented to and examined and allowed by the board of supervisors as county charges.   Of this class, continues the court, would be claims for the malfeasance of county officers, and claims arising on torts for which the county might be liable.   'Such controversy,' in the first section, means, as we think, such a claim or cause of action as cannot be settled and adjusted on the application of the party in the exercise of the ordinary powers of the board of supervisors, and *which is not a county charge until it passes into judgment.*"   Without going over the whole of the able opinion, it is enough to say that it fully establishes the doctrine that suits against a county can only be brought for such causes of action as cannot be settled by the board of supervisors; such as torts, &c.   This same doctrine is reiterated in the strongest manner in the case of *Martin* v. *Supervisors* (29 N. Y. 645), where the court say that no action can be maintained against a county to recover for a county charge.   This doctrine has by this court been applied to the case of towns.   In *Bell* v. *The town of Esopus* (49 Barb. 506), it was held that an action will not lie against a town to recover a claim arising on contract.   In fact, this conclusion necessarily follows from the decision in *Brady* v. *The Supervisors.*   For the provisions of law in respect to claims and actions against towns are almost precisely similar to those in respect to claims and actions against counties.   A town may sue and be sued.  (1 R. S., marg., p. 337, § 1.)  So may a county.  (1 R. S., marg., p. 364, title 5, § 1.)  And the provision (1 R. S., marg., p. 356, § 1) that whenever any controversy or cause of action shall exist between a town and an individual, such proceedings may be had either in law or in equity for the purpose of trying and finally settling such controversy, &c.,

is, with scarcely the variation of a word, the very same pro-vision that exists as to counties. (1 R. S., marg., p. 384, title 3, § 1.) And this provision, as has above appeared, has been held by the Court of Appeals to give a right of action *only* in such cases as do not arise on contract; such, that is, as torts, malfeasance of officers and the like.

The case *ex parte Lynch* (2 Hill, 45), which has been thought to be in conflict with these cases, is not so in the least. There a mandamus was refused because an action lay against the city of New York. The right to bring an action against *a city* on contract is not in question. Such actions are fre-quent. There is not, in respect to cities, any *quasi* judicial tribunal authorized to audit claims, such as the supervisors are as to counties, and the board of audit as to towns. But the doctrine decided by the Court of Appeals is, that in respect to *counties*, the law has established a different tribunal from the courts of law, and has required claims (on contract) to be presented to the board of supervisors for allowance and settle-ment, and has refused to permit actions at law.

The law of 1840, chap. 305 (1 R. S., 5th ed., marg., p. 355, art. 5), provided for a board of town auditors, "for the pur-pose of auditing and allowing the amounts of all charges and claims payable by their respective towns." (§ 1.) The corres-ponding language in respect to supervisors is that they shall have power to "examine, settle and allow all accounts charge-able against such county." (1 R. S., marg., p., 367, § 2.) The language is so nearly the same that, as is held in *Bell* v. *Town of Esopus*, the decision in *Brady* v. *The Supervisors* must apply.

It is true that by the general act of 1864, chap. 8, the proceedings of this town meeting were legalized, and the liability incurred was declared to be a debt against the town, to be paid with interest. But the fact that it thus became (what perhaps it was not before) a *debt* against the town, does not change the law as to the mode of collecting or enforcing this debt. It is because it *is a debt*, and is not a cause of action arising out of *tort*, that it must be presented to the

board of town audit, and cannot be sued upon.  Chief Justice OAKLEY, in the case above cited, says : " There are many cases reported in which writs of mandamus have been issued to boards of supervisors.  There is none of these where the amount to be audited was not fixed by statute, or where the amount claimed was not admitted," &c.  And it is said by the Court of Appeals, in *Martin*, v. *Supervisors, ut supra*, that mandamus is allowed to " set them in motion, and compel them to adjudicate."  It is argued by the plaintiff, that because, as is claimed, the amount of the debt is liquidated, therefore, the town may be sued.  But the doctrine is not that a county may be sued on a liquidated claim, and that it is only the unliquidated claims which must be presented to the board of supervisors.  The doctrine is, that a county can be sued only for such causes of action as malfeasance and tort, and the like, such " as are not a county charge until they pass into judgment."  And the doctrine, as to towns, is similar.  The case of *Bell* v. *Esopus* was not decided on the ground, that the claim was unliquidated, but on the ground that it arose on contract.

The act of 1864, also declares that such a certificate as that in question shall be evidence of the amount of the debt, of the time from which interest is payable, and of the persons to whom it is payable.  But it does not declare the certificate *conclusive* on these points, and they are probably open to other proof.  Without some such enactment, the certificate would probably not have been admissible in evidence at all.  The signing it was an act which was probably at the time not authorized.

The object of the statute of 1864, was to give validity to the action of those towns and counties, which, in the earnestness of their zeal, had voted to contribute of their property to the support of the national government in its struggle.  It was not necessary for this purpose to disturb or unsettle the general manner of enforcing claims against towns and counties.  That was already provided for and settled.  Boards of town auditors had been established, who were authorized

to audit and allow all claims payable by their towns. The difficulty was, that these certificates and similar liabilities were not (probably) legal claims. It was the object of this act to make them so. If they were legal claims, then they could be enforced like other claims against the town. And the legislature did not, by the act of 1864, intend that any means should be authorized for the collection of these debts which did not exist in respect to other town debts. And it seems to be a wise system of law which provides, in respect to towns and counties, that claims against them shall be presented to their respective officers for allowance and settlement. Certainly, the general rule seems to be well settled, that claims against towns and counties are not to be collected by action, except such as have been above mentioned; that is, claims on tort, malfeasance, and the like. And it is undesirable to make such a claim as the present, which arises strictly on contract, an exception to this general rule; unless the language of the legislature is positive that it shall be such an exception. But merely declaring that this claim is a debt against the town, does not necessarily imply that it is to be enforced in a manner different from that in which other debts are enforced.

I think, therefore, that this action cannot be maintained, and being of that opinion, I need not examine the other question.

The judgment should be reversed with costs.

Judgment affirmed.