(15 App. Div. 508.)

PEOPLE ex rel. PENNELL et al. v. TREANOR et al.

(Supreme Court, Appellate Division, Second Department. April 6, 1897.)

1. OFFICERS—LIABILITY ON CONTRACT—LOSS OF FUNDS.
   Commissioners appointed to lay out a highway (Laws 1892, c. 493), to whom town bonds were delivered to be used in paying for the work, are not relieved from liability therefor by the fact that they had sold the bonds for credit, being unable to sell them for cash, and that the purchaser had become insolvent.

2. MANDAMUS—REMEDY AT LAW.
   Mandamus against a public officer will not be denied on the ground that there is an adequate remedy at law, if there is a reasonable doubt as to the certainty of a right of action at law.

3. SAME—TO PAY MONEY—LACK OF FUNDS APPLICABLE.
   Mandamus to compel public officers to pay money will not be denied because no funds are in their hands, where the claim in question was payable only out of the proceeds of bonds delivered to the officers for that purpose, and they had sold the bonds, but had been unable to collect the price.

Appeal from special term, Kings county.

Application by Joseph B. Pennell and Thomas O'Horn for a writ of mandamus to compel James J. Treanor and others, commissioners appointed under Laws 1892, c. 493, to lay out Warburton avenue through a portion of the town of Greenburgh, to pay the relators $15,836 under a contract made in July, 1893. A peremptory writ was granted, and defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Joseph F. Daly, for appellants.
L. Laflin Kellogg, for respondents.

GOODRICH, P. J. Under the provisions of chapter 493 of the Laws of 1892, entitled "An act to provide for the construction of highways and bridges upon highways running through two or more towns in the same county," the appellants were appointed commissioners to lay out and continue Warburton avenue through a portion of the town of Greenburgh, and to construct the roads and necessary bridges therein. On July 28, 1893, they entered into a contract with the relators for doing the work for the sum of $89,443.10, payable only out of the moneys or proceeds of bonds collected and received by the commissioners from the supervisor of the town of Greenburgh, raised for the purpose of paying the expenses of laying out the road. The relators entered upon the performance of their work, which was suspended for reasons connected with the sale of the bonds hereinafter referred to, but in September, 1895, they received from the engineer of the commissioners a certificate in accordance with the contract that the value of their work, completed up to that time, was $37,886. It appears,

also, that the sum of $15,876 of that amount still remains unpaid. The appellants admitted the receipt of bonds from the supervisor of the town of Greenburgh to the amount of $149,000, and that the entire sum expended by them did not exceed $70,000, leaving unused by them the sum of $79,000. They set up as an affirmative defense that, after the receipt of said bonds, they offered them for sale, but were unable to sell immediately,—a question having been raised that the act under which the commissioners were appointed was unconstitutional, and the proceedings of the commissioners, therefore, void and illegal; that they afterwards made an arrangement with Coffin & Stanton, brokers, by which they sold the bonds to them, not for cash, but upon condition that $49,000 should be paid on the delivery of the bonds, and the balance at certain specified times stated in the agreement; that they never received from Coffin & Stanton any other sum than the $49,000; and that Coffin & Stanton have become insolvent. It appears, however, that in pursuance of the contract of sale they received from Coffin & Stanton, as collateral security for the payment of the unpaid balance, certain municipal bonds, amounting on their face to $100,000, the validity or value of which does not appear, and they claim that they are not liable for the portion of the price of the bonds which they did not receive.

That the appellants are public officers was expressly decided in the case of People v. Nostrand, 46 N. Y. 381, where the question before the court involved the rights of commissioners appointed to lay out a highway in Queens county. The appellants, therefore, are subject to the law which applies to other public officers. In the recent case of Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, a question which is stated by the court to have been, theretofore, an open question in this state, is decided against the contention of the appellants as to their personal liability for the loss of the money. It was a case where the defendant Merrill, while supervisor of the town of Stockbridge, deposited with a firm of private bankers, to his credit as supervisor, certain of the public moneys in his hands. The banking firm afterwards failed, and the money was thereby totally lost. The action was brought by the county treasurer to recover the amount from Merrill and his bondsmen, upon the theory that Merrill, on receiving the money, became debtor of the county, and that the deposit of the same was at his own risk. The court stated that there was no question but that the supervisor had acted in good faith and without negligence in the deposit of the moneys, so that the question as to the liability of a public officer for moneys intrusted to his custody was clearly brought up. After a careful examination of the authorities in this and other states, Judge Bartlett, writing the opinion of the court, held:

"Without regard to decisions outside of our own jurisdiction, we think that the weight of the argument, treating this as an original question, is in favor of the rule of strict liability, which requires a public official to assume all risks of loss, and imposes upon him the duty to account as a debtor for the funds in his custody. * * * The views we have here expressed lead to a final judg

44 N.Y.S.—34

ment against the defendant Merrill as supervisor of the town of Stockbridge, although he is shown by this record to have discharged his official duties in an honorable and faithful manner."

We are, therefore, of the opinion that the appellants, being public officers, are liable to mandamus in the same manner as if they had in their hands the bonds themselves, or the proceeds thereof in cash, to be used by them as provided in the act of 1892.

It is also contended by the appellants that the writ of mandamus will not lie, because the relators may have their action for the amount due them, and that it is settled in this state that a writ of mandamus will not be issued in any case where the relators have adequate legal remedy by action. This principle, however, is not to be too strictly construed, nor stretched to undue proportions. It is not entirely clear that an action at law would lie in favor of the relators against the appellants individually for the unpaid amount due the relators. The contract between the relators and the appellants provides that the money shall be paid to them only out of the moneys received by the commissioners from the town of Greenburgh, or from the proceeds of bonds furnished them by the supervisor. On the other hand, it is doubtful, to say the least, whether an action would lie by them against the town of Greenburgh, whose duty it was to furnish the bonds to the commissioners of the improvement, or whether the relators can be relegated to an action to compel the town of Greenburgh to bring an action against the commissioners for their neglect and misfeasance, and to another action to have the moneys collected in such an action applied to the payment of the amount due the relators.

Where there is a reasonable doubt as to the certainty of a right of action, we are of the opinion that, although there may be a remedy at law, a writ of mandamus should be issued to enforce a clear right against a public officer. It is true that the writ is a high prerogative writ. Merrill, in his treatise on Mandamus (section 49), says:

"The writ of mandamus has often been styled a high prerogative writ, the right arm of the law, and one of the flowers of the crown. It is not lightly called into exercise. It will only be used to protect a person from substantial injury, or to secure or protect substantial rights."

But it will issue to compel the performance of an act purely ministerial; that is, an act which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety of the act to be performed. In the present case the appellants had no other than a ministerial duty to perform. The act under which they were appointed (section 6) provides that the bonds of the town shall be issued for the purpose of paying the cost of the improvement, and contains the following provision:

"Such bonds shall * * * be delivered to the said commissioners to be paid out by them at not less than par in liquidation of the said damages, costs, charges and expenses of laying out, opening and constructing the said road or at their option, to be sold at not less than par and the proceeds thereof applied as aforesaid."

It became the ministerial duty of the commissioners, upon the production of the proper certificate of their engineer, to pay the relators the amount of the contract obligation. It was their duty to sell the bonds, if they sold them at all, at not less than par, for cash, and not upon credit. If they had not been able to sell the bonds, they were authorized to pay them out to the contractors, provided the latter were willing to receive them; but their duty was clear to take one course or the other. This required no exercise of their own judgment or opinion concerning the propriety of the act to be performed. The use of the bonds or their proceeds in the payment of the contractors was purely ministerial. In re Freel, 148 N. Y. 165, 42 N. E. 586.

The appellants further contend that a writ of mandamus to compel the payment of the amount due will not issue where there are no funds out of which they can make payment, and that the evidence conclusively shows that there are no such funds. To permit this contention would be to allow the commissioners to set up their own wrongdoing as a defense. The act provides a specific method for the use of the bonds. They were "delivered to the said commissioners to be paid out by them at not less than par in liquidation of the said damages, costs, charges and expenses of laying out, opening and constructing the said road or at their option, to be sold at not less than par and the proceeds thereof applied as aforesaid." This was the clear mandate of the act, which is the charter of their existence. It was, at once, their sword and shield. They could use the bonds as the act indicated. They could be compelled to no other disposition of them, and their defense, either to an action for a money demand or to an application for a writ of mandamus, would have been that, while they could not dispose of the bonds at par, they were willing to pay them to the contractors in liquidation of their claim. That they are able to do neither is a result of their own illegal act.

It is, therefore, no answer to this application that the commissioners have not the funds in hand to pay the relators. They received the bonds, and would have had them, or the cash proceeds, except for their wrongful disposition of them. It cannot be seriously contended that, if the commissioners for any reason had not been able to sell the bonds at par, the relators could have compelled them to sell the bonds at less than par, or to pay the contractors in cash, when they had no cash wherewith to pay, and no means of raising it, except by sale of the bonds in a manner not authorized by the act. In People ex rel. Dannat v. Comptroller of City of New York, 77 N. Y. 45, a contract had been made for building a schoolhouse, and Dannat had obtained from the contractor a valid order on the board of education for the payment of a certain sum out of a specified installment when it should become due under the contract. When the installment became due, the board made a certificate in the nature of a voucher, and transmitted the same to the comptroller; but the comptroller disregarded the order, and paid the whole installment to the contractor.

Dannat applied for a writ of mandamus to compel payment of his order, and the court held:

"It is a general rule that the writ of mandamus will not be awarded when it appears that there are no funds out of which the warrant can be paid if drawn. High, Extr. Rem. § 352. But, when the money has been appropriated for a specific purpose, it is not in all cases a sufficient answer to an application for a mandamus to compel its payment for that purpose to set up that the money has been wrongfully applied to other purposes. It may be regarded, in contemplation of law, as still in the treasury."

The reasoning of this opinion gives added force to our views in the present proceeding. The comptroller had failed in his duty to pay the money due to the relator, and had applied it to another purpose, and by reason of this failure his successor in office was compelled to pay the relator's claim. In the case at bar, the commissioners were intrusted with bonds of which they wrongfully disposed, in a manner clearly not authorized by the statute. If they could not sell the bonds for cash, at par, they could have paid them over to the contractors, who entered into the contract with full knowledge of the provisions of the act. The contract stated in express terms that it was made by "the Warburton Avenue Extension Commission, party of the first part," and it was executed under the corporate seal of the commission, and signed by the relators in their official capacities as president, secretary, and treasurer, respectively, and provided that the relators were to be paid "only out of such moneys as shall be collected and received by the party of the first part from the supervisor of the town of Greenburgh, in the county of Westchester, state of New York, as provided by chapter 493, Laws 1892, for the cost of said improvements, and only due and payable when such moneys shall have been collected and paid to said commission." This contract created no personal liability on the part of the relators if they performed the duty as it was imposed upon them by the act. It is only their failure to fulfill their plain duty as laid down in the act that has given rise to the present condition of affairs, and they cannot be permitted to set up their own wrongdoing as a defense.

In our use of the words "wrongful" and "illegal," as applied to the action of the commissioners, we do not intend to imply that their action was occasioned by any moral obliquity on their part, or that they did not act as they thought was for the best interest of the matter in their charge; but we are dealing solely with the legal deductions that must follow their action, and we agree with the views expressed by the learned trial justice, that there is nothing to impugn the uprightness and integrity of the defendants. It may well be that the commissioners will be subjected by this procedure to imprisonment for contempt, in case of their disobedience of the final judgment; but that is a matter which will receive careful attention when it is presented for consideration, although it cannot be permitted to influence our conclusion.

We are, therefore, of opinion that the judgment must be affirmed, with costs. All concur, except BARTLETT, J., who concurs in the result.