JOHN H. COYNE, as Sole Surviving Executor of the Last Will and Testament of FRANCIS T. HOLDER, Deceased, Appellant, *v.* THE TOWN OF GREENBURGH, Respondent, Impleaded with Others.

Second Department, December 23, 1920.

Towns — extension of highway by commissioners appointed pursuant to Laws of 1892, chapter 493 — commissioners as public officers — right of Legislature to require local improvement to be made by specially appointed boards — commissioners as agents of town — action to recover cost of construction of highway by plaintiff's testator — delivery of bonds to commissioners not payment — misfeasance of commissioners in selling bonds as defense to action against town for cost of construction — knowledge of contractor of alleged illegal sale of bonds as defense — res judicata — audit of claim by town board not necessary — provision of contract as to payment as defense.

Commissioners appointed pursuant to the provisions of chapter 493 of the Laws of 1892 providing for the extension of a highway in one town along and through another town are public officers.

The Legislature may require local improvements to be made by specially appointed boards or officers and charge the expense of such improvements upon the municipality benefited, and the statute in question is an act of that character.

The commissioners appointed pursuant to the statute to open and construct the highway in the defendant town were agents of that town.

The commissioners so appointed ascertained the damages to land caused by the opening of the highway and ascertained also the cost of construction and duly certified the several amounts to the supervisor of the defendant town of Greenburgh, and bonds of the town were issued for a little

less than the certificate in the first item and for a little more than the cer-
tificate in the second item. The said commissioners entered into a contract
for the construction of the road and then sold the entire issue of bonds on
a time basis to a firm of stockbrokers who deposited collateral as security.
The firm of brokers failed and the purchase price of the bonds was not fully
paid. The contractors refused to continue without pay, and the plaintiff's
testator entered into a contract with them, with the consent of the com-
missioners, whereby he advanced enough money to complete the work.

*Held*, that while the statute imposes the duty of paying, the means of payment
are not exclusive, and the duty of payment can only be fulfilled by actual
payment. Therefore, the delivery of the bonds to the commissioners did
not constitute payment by the town.

Although this action is in equity for the purpose of having the amount due
the plaintiff adjudged, the collateral sold and applied and a judgment for
deficiency rendered, it is based on the contract to construct the road, the
contractor having assigned his claim to the plaintiff, and the plaintiff's
right to recover is not affected by the fact that there has been an official
misfeasance in the sale of the bonds.

The fact that the contractors, who entered into the construction contract
before the bonds were sold, were aware of the fact that the sale of the bonds
was illegal is no defense to the action.

Furthermore such defense is *res judicata* since the same defense was inter-
posed in a proceeding brought by the contractors to mandamus the com-
missioners to pay them a certain amount due on their contract, and the
decision was adverse to the commissioners and, while the present defendant
was not a party to that proceeding, it was represented for the purpose of
that litigation by the commissioners.

It was not necessary to present the claim of the plaintiff to the town board
of the defendant or for that board to audit it, for the Legislature had
intrusted the duty of audit to the commissioners and the commissioners
had performed that duty.

Furthermore the contract fixed the amount payable to the contractors when
the work should be done and the engineer's certificates show the comple-
tion of the work, and in the mandamus proceeding the amount due was
admitted and that proceeding was decided on that basis; therefore, the
plaintiff's claim is for a liquidated amount which has been judicially
determined.

The provision in the contract for construction that the contractors shall
be paid only out of the money received by the commissioners from
the defendant town is not a defense to this action as that clause was
inserted merely to protect the commissioners from individual liability.

APPEAL by the plaintiff, John H. Coyne, as sole surviving
executor, from a judgment of the Supreme Court in favor
of the defendant, entered in the office of the clerk of the
county of Westchester on the 16th day of March, 1920,

upon the decision of the court, rendered after a trial at the Westchester Special Term, dismissing the complaint upon the merits, and also, as stated in the notice of appeal, from an intermediate order of the court made at the trial on the 4th day of February, 1919, denying the plaintiff's motion to strike out, the defendant's second defense.

*Chester B. Masslich* [*Charles C. Marshall* and *Charles L. Porter* with him on the brief], for the appellant.

*Joseph B. Thompson* [*Frank D. Briggs* with him on the brief], for the respondent.

JAYCOX, J.:

The Legislature in the year 1892 passed an act (Chap. 493) providing for the extension of a highway in one town along and through another town in the same county. Pursuant to the provisions of this act application was duly made and commissioners appointed to extend Warburton avenue in the city of Yonkers from the north line of the city and town of Yonkers through the town of Greenburgh to the village of Hastings. Thereafter, pursuant to the provisions of said act, the commissioners appointed thereunder ascertained and certified that the land damage caused by the extension of said highway amounted to the sum of $39,917.72, and the supervisor of the town of Greenburgh, to whom the certificate was delivered, pursuant to the provisions of said act issued bonds of the town of Greenburgh to the amount of $39,000, and delivered the same to the commissioners. The commissioners further ascertained and determined the amount of the costs, charges and expenses of constructing the road at the sum of $109,301.85, and duly certified said amount to the supervisor of the town of Greenburgh and bonds of the town for $110,000 were likewise issued and delivered to the commissioners on April 16, 1894. The said commissioners became known as and were generally referred to as "The Warburton Avenue Extension Commission."

Thereafter said commission entered into a contract with Pennell & O'Hern for grading and constructing the said highway, the stipulated amount to be paid to the contractors under said contract being $89,443.10. Thereafter the said

commission sold the entire issue of said bonds to Coffin & Stanton, a firm of brokers, and received at the time on account of the sale $49,000 cash, the balance to be paid in monthly installments of $10,000 each, the first installment to be paid June 1, 1894, and $10,000 on the first of each succeeding month until the whole balance of $100,000 was paid. Coffin & Stanton paid two installments, $20,000, then became bankrupt and their assets passed into the hands of a receiver. Coffin & Stanton, pursuant to their contract for the purchase of the bonds, delivered to the Warburton Avenue extension commission certain collateral. The contractors proceeded with their work until the amount of the work done largely exceeded the amount paid on account of the contract. They then refused to go further because of non-payment. The work remained at a standstill for some time and then Francis T. Holder, the original plaintiff, entered into a contract with Pennell & O'Hern (to which the commission gave its assent) under which Holder was to finance the contractors by paying to them the amount then due under their contract and the subsequent amounts which became due as the work progressed. Pursuant to this contract, Holder advanced the amount then due and made the subsequent payments in accordance with the engineer's certificates.

The highway has been completed; Holder has paid Pennell & O'Hern in full for the work done by them and now brings this action in equity for the purpose of having the amount due the plaintiff adjudged and determined, including interest and costs, the collateral security sold under the direction of this court and the proceeds arising from the sale brought into court, the plaintiff paid the amount which may be found to be due him, together with interest and costs, so far as the money applicable from said sale will pay the same, and the plaintiff awarded judgment for any deficiency that there may be against the town of Greenburgh and the defendants John G. Peene, John Besson and James J. Treanor, and for such other relief as may be just and equitable. Peene, Besson and Treanor, above named, were the Warburton Avenue extension commissioners who entered into the contract with Pennell & O'Hern. After a trial at Special Term the court held that the plaintiff was not entitled to recover (110 Misc. Rep. 598).

The above-mentioned act under and pursuant to which the highway in question was built provides as follows:

" § 6. The said commissioners shall ascertain and determine the cost, charges and expense of laying out and opening, constructing and grading the said road and the amount of damages awarded to owners or occupants of property through which the same shall have been laid out for the lands taken, and the amount as so ascertained shall be paid by the town through which said road was continued and constructed and said lands taken. The bonds or obligations of each of said towns for the proportion of such damages, cost, charges or expense so charged to them shall be issued by each of said towns in such sums as are deemed advisable by the respective supervisors thereof, and shall be payable in twenty years from the date thereof. Such bonds shall bear interest at the rate of four per centum per annum and the bonds of each town shall be executed by the supervisors and town clerk thereof and delivered to the said commissioners to be paid out by them at not less than par in liquidation of the said damages, costs, charges and expenses of laying out, opening and constructing the said road or at their option, to be sold at not less than par and the proceeds thereof applied as aforesaid."

It has already been determined that the commissioners appointed under said act were public officers. (*People ex rel. Pennell* v. *Treanor,* 15 App. Div. 508.) The Legislature of the State may require local improvements to be made by specially appointed boards or officers and charge the expense of such improvement upon the municipality benefited. This act has already been construed as an act of that character in *Citizens' Savings Bank* v. *Town of Greenburgh* (173 N. Y. 215). The road in question was wholly within the town of Greenburgh and the expense of its construction was properly chargeable to that town, and the act in question expressly provides that the cost, charges and expense of laying out a highway under said act shall be paid by the town through which the said road is continued and constructed and the lands therefor taken. Section 2 of article 10 of the Constitution, known as the home rule clause of the Constitution, is not violated by the appointment of such commissioners nor the devolution

upon them of duties of the character required by this act. (*People ex rel. Commissioners, etc.,* v. *Supervisors of Oneida County,* 170 N. Y. 105; *People ex rel. Kilmer* v. *McDonald,* 69 id. 362; *Mayor, etc.,* v. *Tenth National Bank,* 111 id. 446.) In the last case the court (at p. 454) says: " From this review of the statutes it is clear that the court house was a county building, built for county purposes, at the county expense, upon county real estate actually purchased of the city, and that when built it belonged to the county. The commissioners appointed to build it were county commissioners, engaged in disbursing county moneys, and discharging functions devolved upon them as county officials or agents. It matters not that they were appointed by the mayor of the city. It was for the Legislature to determine how they should be appointed. It could have named them in some act, or could have devolved their appointment upon the board of supervisors, or the sheriff, or some other local officer. Their character as county commissioners depended, not upon the source of their appointment, but upon the nature of their duties and powers, and of the work they were required to perform. That they were county commissioners has been several times decided by the courts in New York, in unreported decisions, and the following cases tend strongly to the same conclusion: *People* v. *Stout* (23 Barb. 349); *Wood* v. *Mayor, etc.* (7 Hun, 164); *People ex rel. Ryan* v. *The Civil Service Boards* (41 Hun, 287); *Ehrgott* v. *Mayor, etc.* (96 N. Y. 264); *Walsh* v. *Mayor, etc.* (107 N. Y. 220). * * * Municipal corporations are creatures of the State and exist and act in subordination to its sovereign power. The Legislature may determine what moneys they may raise and expend, and what taxation for municipal purposes may be imposed; and it certainly does not exceed its constitutional authority when it compels a municipal corporation to pay a debt which has some meritorious basis to rest on." A judgment recovered against the county for moneys advanced to court house commissioners appointed by the mayor of the city of New York, the moneys having been misappropriated, was affirmed. Numerous other cases to the same effect might be cited. I think it is sufficient to say in this connection that the streets and highways belong to the State at large and that for the

purpose of effecting some object in relation to such streets and highways the Legislature may designate other than local officers and clothe them with powers relating to the opening and construction of such highways. The expense of such highways is now by general laws imposed upon the local subdivision through which the same run, and no reason is advanced why the same cannot be done by an act of the Legislature enacted for that purpose alone. (*Town of Greenburgh* v. *International Trust Co.*, 94 Fed. Rep. 755, 757.)

The act in question provides that the expenses, etc., incident to laying out and constructing the said road shall be paid by the town through which the same runs. It is claimed that the town, having once issued bonds to pay for this work, has performed the only duty imposed upon it. In this connection it is also claimed that the Warburton Avenue commissioners were not agents of the town, as the town had nothing to do with their appointment, no control over their acts or power of removal. I think it has already been decided, and properly so, that these commissioners were agents of the town. In *Citizens' Savings Bank* v. *Town of Greenburgh* (*supra*, 226) the court in its opinion said of the commissioners that: " They were the agents of the town, for the purpose of discharging the cost of the work and the claims arising upon the construction of the highway, through the application, or sale, of the bonds, and were responsible to it for the faithful and proper performance of their duty in that respect. They, merely, held bonds, which the town had issued, until they could be used in paying the indebtedness of the town, and if they disposed of them contrary to the statutory provision as to price, it is obvious that that was a matter, if not of fraud, of a deviation from the authority they possessed; which, for not affecting the factum of the bond, cannot, and should not, be chargeable to the innocent purchaser." The agency of the commissioners is not disposed of merely in the words quoted but it is discussed at considerable length and is apparently a firm conviction arrived at after careful consideration. A number of cases are cited in which commissioners appointed in a similar manner were held to be agents of the town.

Not only does the act in question impose upon the town the

direct, positive duty of paying for the land taken for the highway and its construction, but the means of payment are not exclusive. Bonds of the town are to be issued in such sums as the supervisor deems advisable. In this very instance the first certificate is for a larger amount than the bonds issued and the second is for a smaller amount than the bonds issued. The total amount of the certificate is a little more than the amount of the bonds issued. This was a practical construction of the act, showing that it was understood as imposing on the town the payment for this highway. Clearly this was the correct construction of the act. The town might be in possession of funds sufficient to pay a substantial part of the cost or it might desire to raise by tax, collectible before the contract was completed, a considerable portion of the cost of this improvement. This, I think, indicates that the town must, under the statute, pay for the improvement. The direction to issue bonds is applicable to the amount over and above that which the town paid in cash. The duty of payment imposed by the statute is fulfilled only by the actual payment. The failure of the means provided does not relieve the town. There are cases, however, in which payment is to be made from a particular fund raised and set apart for that purpose, and in those cases the creditor can look only to that fund. But in those cases, I think, it will be found that no direct liability to pay is imposed upon the corporation. The distinction between these two classes of cases is clearly pointed out in *Davidson* v. *Village of White Plains* (197 N. Y. 266, 268). Under the act in question in that case water commissioners of the village of White Plains were created and certain duties imposed upon them and it directed that their contracts should be paid by the issuance of bonds by the village trustees upon requisition of the water commissioners. The water commissioners made no such requisition, no bonds were issued and plaintiff sued the village for goods sold to the commissioners. The court, by Chief Judge CULLEN, said: " The plaintiff has been defeated on the principle that where a particular mode of discharging the obligation of a municipal corporation is provided by law that mode must be pursued, the learned courts below placing their decision on the authority of *Dannat* v. *Mayor, etc., of N. Y.* (66 N. Y. 585) and *Swift* v.

*Mayor, etc., of N. Y.* (83 N. Y. 528). That this principle is correct cannot be gainsaid, but we must be careful to distinguish between a provision of law that prescribes how a creditor of a municipal corporation may obtain payment of his claim and one which simply prescribes the method by which the corporation is authorized to obtain funds with which to pay the claim, merely regulating internal management of the corporation itself. We think the case before us does not fall within the principle of the *Dannat* or *Swift* case.  *  *  * In neither of these cases was there any general obligation upon the city to discharge obligations incurred by the contracts made by those boards. The case before us is different. *  *  * The liability of the village for the obligations incurred by the commissioners is general and unlimited. *  *  * In my opinion this scheme does not provide any particular mode for the payment of the obligations of the village in the discharge of liabilities incurred in the construction and maintenance of the water plant within the true meaning of that rule." A case more closely analogous to the present case is *Federgreen* v. *Town of Fallsburgh* (25 Hun, 152). In that case the town raised and paid over to commissioners the money to pay interest coupons upon bonds issued for railroad purposes. The commissioners did not apply the moneys to the payment of the coupons and it was held that payment to those commissioners, selected without the consent of the town or any officer thereof, was not payment and the town remained liable until actual payment was made. In the opinion the court makes this pertinent statement: "The handing of that money to the commissioner, does not pay the obligation, any more than the receipt by a county treasurer of money raised by taxation discharges county liabilities. This is plain common sense." (See, also, *Bennett* v. *Town of Ogden*, 81 App. Div. 455, 458; *Brown* v. *Town of Canton*, 4 Lans. 409; *Horn* v. *Town of New Lots*, 83 N. Y. 100; *Marsh* v. *Town of Little Valley*, 64 id. 112, 115; *United States* v. *Fort Scott*, 99 U. S. 152.) This action, although in equity, is based upon the contract to construct the road, and the law relative to actions to recover for the misfeasance of a public officer or actions to recover upon municipal bonds has no application. The contractor has done his work, has completed the highway,

and under the statute the town was to pay for this work. The contractor has sold and assigned his claim to the plaintiff, and the plaintiff's right to recover is not affected by the fact that there has been official misfeasance, except that an action would not have been necessary if the officials in question had performed their duties. If the officers in question had sold the bonds and then absconded with the proceeds I think it would not have been claimed that the loss should fall on the contractor. In legal effect the result of the situation is the same. The debt of the town has not been paid because of official misconduct, and until discharged by actual payment that debt remains the debt of the town, no matter how many abortive attempts to pay are made. The plaintiff's assignor, it has been found, was cognizant of and consented to the sale of the bonds to Coffin & Stanton, partly for credit and partly for cash (21st finding), and this is made a ground for deciding against plaintiff in so far as the town is concerned, the learned judge at Special Term saying: " If they had so objected they might be considered innocent parties who were not bound by the unauthorized act of the commissioners." (110 Misc. Rep. 608.)    This observation would be entirely correct if the action were brought to recover upon the bonds. Even in that case, I think, it would be a matter of defense to be pleaded and proved. No cases are cited to support this position, and I know of no rule of law upon which it is based. The contract for the construction of the road was made prior to the sale of the bonds, so the contractor did not enter into that with knowledge of an illegal sale. At the time of the sale the contractor was bound by the contract and under bond to do this work. He could not escape. This did not impose any responsibility upon him for the manner in which the commissioners performed their duties. Further than that, I think this question is *res adjudicata.*

The contractors instituted a proceeding to obtain a writ of peremptory mandamus to compel the Warburton Avenue extension commission to pay them the sum of $15,886, due upon their contract. An order was made directing such writ to issue and the commissioners appealed to the Appellate Division (*People ex rel. Pennell v. Treanor,* 15 App. Div. 508). If the contractors had consented to or participated in the

illegal sale of the bonds to such an extent as to destroy their right of recovery, this would have been a complete defense in that proceeding. The facts in relation to the sale are set up by the defendants, and the participation and consent of the contractors pleaded as a defense. It is shown that Coffin & Stanton were insolvent and that the defendants received only the amounts heretofore mentioned herein. If the contractors participated in that illegal sale to such an extent as to deprive them of the right to recover under their contract, they certainly could not compel a payment on account thereof by mandamus. The commissioners having set up this defense and the decision being adverse to them, it is now *res adjudicata*. It is true that the town of Greenburgh was not a party to this proceeding, but it is bound by the result and by the matters which have been adjudicated, the same as if it had been a party thereto. This is so because for the purposes of that litigation the Warburton avenue commissioners represented it. (*Ashton* v. *City of Rochester*, 133 N. Y. 187; *Keller* v. *City of Mount Vernon*, 23 App. Div. 46; *Holt County* v. *National Life Ins. Co.*, 80 Fed. Rep. 686; *Ransom* v. *Pierre*, 101 id. 665.)

The defendant town contends and the court below has held that there can be no recovery herein because the claim which is the basis of this action has not been presented to or audited by the town board of the town of Greenburgh. That is undoubtedly the general rule laid down in *Osterhoudt* v. *Rigney* (98 N. Y. 234), *People ex rel. Myers* v. *Barnes* (114 id. 317), and numerous other cases. It is, however, only a general rule and subject to exceptions. Some debts of a town can be collected without resort to an audit. This is undoubtedly true as to a claim for money due upon evidences of debt (bonds, coupons, etc.) issued by the town. It is also true when the Legislature has intrusted to some other board the duty of determining the amount of the town's liability. In this case the Warburton Avenue extension commission performed that duty and the town was directed by the statute to pay the money "as so ascertained." The town had no discretion in the matter. It could not by means of any of its officers fix or determine upon any other amount. If the conclusion is correct that the issuance and delivery of the bonds to the commissioners did not constitute payment, then

this is an unpaid claim against the town in an amount fixed and determined by a board of officers duly authorized to perform that duty. There was, therefore, no occasion to present this claim for audit. (*People ex rel. Bahn* v. *Supervisors,* 9 Hun, 440; *Brown* v. *Town of Canton,* 4 Lans. 411.) The amount due has been fixed beyond question in another manner, so that the claim is liquidated and need not be audited. The contract fixed the amount payable to the contractor when the work should be completed and the engineer's certificates show the completion of the work. In the mandamus proceedings instituted by Pennell & O'Hern (15 App. Div. 508) it was admitted that the relators had been paid but the sum of $18,000, and that proceeding was decided upon that basis. From that time until the commencement of this action no payments upon account of said contract have been made by the defendants or any one representing them; therefore, plaintiff's claim is for a liquidated sum. The amount paid on account has been judicially determined and is *res adjudicata.*

It is contended that the plaintiff cannot recover because the contract for the construction of the road provides that the contractor shall be paid only out of the money received by the commissioners from the town of Greenburgh. This clause was inserted to protect the commissioners from individual liability. (*People ex rel. Pennell* v. *Treanor, supra.*) As the individual defendants have not appealed, it is not necessary to discuss it further than to say that it constitutes no bar to a recovery by the plaintiff against the town.

The judgment in favor of the town of Greenburgh should be reversed, and judgment directed in favor of the plaintiff against the said town for the balance due on the contract in question at the time of the commencement of this action, less the amount realized on the sale of the collateral mentioned herein and applied on account thereof, with interest and costs. Findings of fact Nos. 30 and 31, and conclusions of law Nos. 1, 2 and 3 reversed. The refusals to find conclusions of law proposed by plaintiff are reversed, and the same are found.

JENKS, P. J., RICH, BLACKMAR and KELLY, JJ., concur.

Judgment in favor of the town of Greenburgh reversed, and judgment unanimously directed in favor of plaintiff against

the said town for the balance due on the contract in question at the time of the commencement of this action, less the amount realized on the sale of the collateral mentioned herein and applied on account thereof, with interest and costs. Findings of fact Nos. 30 and 31, and conclusions of law Nos. 1, 2 and 3 reversed. The refusals to find conclusions of law proposed by plaintiff are reversed, and same are found.