CITIZENS' SAVINGS BANK, Appellant, *v.* TOWN OF GREENBURGH, Respondent.

1. MUNICIPAL BONDS — VALIDITY OF, IN THE HANDS OF BONA FIDE HOLDERS AFFECTED ONLY BY FUNDAMENTAL DEFECT IN CREATION. Negotiable municipal bonds in the hands of *bona fide* holders are unassailable upon any ground that does not relate to the authority for their issue. If there is any element of fraud or irregularity in the conduct of the officers, or of the agents, through whom the bonds pass into the channels of business, it is not chargeable to an innocent purchaser.

2. TOWN HIGHWAY BONDS — SALE OF, AT THEIR FACE VALUE, EXCLUSIVE OF INTEREST, IN VIOLATION OF STATUTE, DOES NOT AFFECT THEIR VALIDITY IN THE HANDS OF INNOCENT PURCHASERS. Town bonds issued under chapter 493 of the Laws of 1892, providing for the construction of highways running through two or more towns of the same county, " executed by the supervisor and town clerk " thereof and delivered to the said commissioners to be paid out by them, at not less than par, in liquidation of the said damages, etc., or, at their option, " to be sold at not less than par and the proceeds thereof applied as aforesaid " (§ 6), become complete

obligations when executed. Their delivery to the commissioners has no relation to their creation. Their sale "flat," that is, without taking into account the interest which had accrued upon them, by such commissioners, which, if not fraudulent, was a deviation from the authority they possessed, constitutes an irregular exercise of the powe to dispose of the bonds but does not affect their validity in the hands of innocent holders for value.

3. CONSTITUTIONAL LAW — L. 1892, CH. 493 — DUTIES IMPOSED UPON SUPREME COURT JUDICIAL, NOT ADMINISTRATIVE. Chapter 493 of the Laws of 1892, relating to the construction of highways running through two or more towns of the same county, section 1 of which provides that upon presentation of the petition to the Supreme Court at Special Term or to the County Court of the county, "the said court shall carefully consider the facts therein alleged, and if it shall be satisfied that the said highway is necessary for the public welfare and convenience and that its continuation and construction will afford a nearer route between two populous points in two towns, than by any existing highway, then the said court may make an order directing that a notice shall be published * * * of the time and place when an application for commissioners shall be made, and at said time and place said court may make an order appointing the commissioners," etc., is not unconstitutional in that it confers non-judicial power upon the Supreme Court of the state and that the procedure is non-judicial, for the lack of a judicial hearing or of a judicial form, inasmuch as it is for the court, first, to carefully consider the facts alleged in the petition. Then, if the court shall be satisfied as to the public necessity for the highway, it *may* order a notice to be published of the time and place for the making of an application for commissioners for the purpose, and, upon the return day, it *may* appoint them. An opportunity is afforded by the notice for parties to be heard, who are interested in the matter, and the court is not compelled, after hearing the parties upon the application, to proceed with the matter, if its *ex parte* consideration of the facts in the petition is differently affected, as the result of a hearing on notice.

*Citizens' Sav. Bank* v. *Town of Greenburgh*, 60 App. Div. 225, reversed.

(Argued November 25, 1902; decided January 13, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 7, 1901, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William B. Hornblower, John F. Dillon, Harry Hubbard, John A. Beall* and *John W. Pirsson* for appellant. The bonds sued on in this action are negotiable instruments according to the law merchant. (*Illinois* v. *Delafield*, 8 Paige, 527; *Bank of Rome* v. *Vil. of Rome*, 19 N. Y. 20; *Brainerd* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 496; *C. Nat. Bank* v. *Faurot*, 149 N. Y. 532; Story on Prom. Notes, § 44; Daniel on Neg. Inst. §§ 99–104; Chitty on Bills [12th Am. ed.], 159; *White* v. *V. & M. R. R. Co.*, 21 How. [U. S.] 575; *M. S. Inst.* v. *N. Y. N. E. Bank*, 170 N. Y. 58; *B. L. T. & D. D. Co.* v. *M. G. Co.*, 162 N. Y. 67; *Cromwell* v. *County of Sac*, 96 U. S. 51.) Plaintiff is the *bona fide* holder of the bonds in question. (*Lexington* v. *Butler*, 14 Wall. 282; *Montclair* v. *Ramsdell*, 107 U. S. 147; *Vallett* v. *Parker*, 6 Wend. 615.) The bonds in suit having been executed and delivered, the fact that the road commissioners may have received something less than par in payment for the bonds in question, or that they received for the $149,000 of bonds only $69,000 in cash and securities of the par value of about $100,000, for the balance due on the contract of sale to Coffin & Stanton, is no defense as against the plaintiff, the Citizens' Savings Bank, a *bona fide* purchaser of said fifty-one bonds. (Daniel on Neg. Inst. [3d ed.] § 1; *Illinois* v. *Delafield*, 8 Paige, 527; *Bank of Rome* v. *Vil. of Rome*, 19 N. Y. 20; *Cagwin* v. *Town of Hancock*, 84 N. Y. 532; *Brainerd* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 496; *C. Nat. Bank* v. *Faurot*, 149 N. Y. 532; *P. T. Co.* v. *Mercer Co.*, 170 U. S. 593; *Burson* v. *Huntington*, 21 Mich. 415; *Waite* v. *Santa Cruz*, 184 U. S. 302; *Whelen* v. *City of Pittsburg*, 108 Penn. St. 162; *Williamsport* v. *Commissioners*, 84 Penn. St. 487; *Sherlock* v. *Winnetka*, 68 Ill. 530; *Achison* v. *Butcher*, 3 Kans. 104; *Griffith* v. *Borden*, 53 Iowa, 133.) The act under which the bonds were issued is not in contravention of any provision of the Constitution of the state of New York. (*Treanor* v. *Eichorn*, 74 Hun, 58; *People ex rel.* v. *Flagg*, 46 N. Y. 401; *Lawton* v. *Comrs. of Highways*, 2 Caines, 179; *People* v. *Champion*, 16 Johns. 61; 1 R. S. [1st ed.] ch. 16, art. 4,

§§ 83–92; *Commissioners of Highways* v. *Judges of Orange Co.*, 13 Wend. 433; *People* v. *Judges of Dutchess Co.*, 23 Wend. 360; L. 1890, ch. 568, art. 4; *Matter of De Camp*, 151 N. Y. 557; Code Civ. Pro. §§ 3357, 3384; *Railroad Co.* v. *Robinson*, 133 N. Y. 242; *Matter of R. T. Comrs.*, 22 App. Div. 472; *People* v. *Smith*, 21 N. Y. 595, *Matter of U. E. R. L. Co.*, 112 N. Y. 61; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150.) The investment in the bonds of the town of Greenburgh, so far from being a prohibited transaction, was authorized by express provision of statute. (L. 1892, ch. 689, § 116; *A. S. Bank* v. *Savery*, 82 N. Y. 291; *R. S. Bank* v. *Krug*, 102 N. Y. 331; *A. S. Bank* v. *Brinkerhoff*, 44 Hun, 142; *U. G. M. Co.* v. *R. M. Nat. Bank*, 96 U. S. 640.)

*J. Rider Cady* and *Frank V. Millard* for respondent. The act of the commissioners in delivering the bonds to the purchasing brokers was void and illegal. It was not void simply as *ultra vires*, but as a forbidden act. The plaintiff was obliged, at its peril, to inquire into the authority of the commissioners to make the contract, and was bound to notice the limitation of their powers. (*Vil. of Fort Edward* v. *Fish*, 156 N. Y. 363; *Pratt* v. *Short*, 79 N. Y. 437; *Pratt* v. *Eaton*, 79 N. Y. 449; *N. Y. S. L. & T. Co.* v. *Helmer*, 77 N. Y. 64; *The Pioneer*, 1 Deady, 72; *Siter* v. *Sheets*, 7 Ind. 132; *Barton* v. *P. J., etc., Co.*, 17 Barb. 397; *Mitchell* v. *Smith*, 1 Binn. 110; *Seidenbender* v. *Charles*, 4 S. & R. 151; *Fowler* v. *Scully*, 72 Penn. St. 456.) Defendant is not concluded by the recital contained in the bonds in suit. (*M. Co.* v. *City of Ironwood*, 20 C. C. App. 646; *Northern Bank* v. *Trustees*, 110 U. S. 608; *McClure* v. *Oxford*, 94 U. S. 429; *Anthony* v. *Jasper Co.*, 101 U. S. 693; *Lake Co.* v. *Graham*, 130 U. S. 674; *G. S. Bank* v. *Franklin Co.*, 128 U. S. 526; *Dixon Co.* v. *Field*, 111 U. S. 83; *N. Bank of the Republic* v. *City of St. Joseph*, 31 Fed. Rep. 216; *P. S. Bank* v. *Vil. of Ashley*, 91 Mich. 670.) Chapter 493 of the Laws of 1892 is unconstitutional, and the legislature did

not possess power to enact it, because it undertakes to confer non-judicial power upon the Supreme Court of the state, to impose upon that tribunal functions that are purely administrative, and also to require the court to exercise those functions by procedure that is non-judicial in its nature. The bonds issued under it are, therefore, void. (*People ex rel.* v. *Waters*, 4 Misc. Rep. 1; 114 Mass. 247; 2 Dillon on Mun. Corp. [4th ed.] 703; *People* v. *Smith*, 21 N. Y. 598; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *Matter of Steamboat Josephine*, 39 N. Y. 19; *Brookman* v. *Hamil*, 43 N. Y. 554; *Vose* v. *Cockroft*, 44 N. Y. 415; *Poole* v. *Kermitt*, 59 N. Y. 554; *Burgoyne* v. *Suprs.*, 5 Cal. 9; *Chard* v. *Harrison*, 7 Cal. 113; *Power* v. *Vil. of Athens*, 99 N. Y. 593.)

Gray, J. The plaintiff, a savings institution incorporated under the laws of this state, sues the defendant for the interest due upon certain bonds issued by it. The defense, in substance, is that the bonds were invalid, for having been issued in violation of the provisions of the act which authorized their issue, and that the act itself is, in a certain respect, unconstitutional. The act is contained in chapter 493 of the Laws of 1892. It is entitled: "An Act to provide for the construction of highways and bridges upon highways running through two or more towns of the same county." Its first section provides that "Any twelve or more freeholders, residing in any county of this state, may present a petition which must be duly verified by at least one of the said freeholders, to the supreme court at a special term to be held in the judicial district where such county is situated, or to the county court of said county, stating that it is necessary for the public welfare and convenience that a highway in any one town in said county shall be continued along and through another town in the same county. Upon receipt of the said petition, the said court shall carefully consider the facts therein alleged, and if it shall be satisfied that the said highway is necessary for the public welfare and convenience, and that its continua-

tion and construction will afford a nearer route between two populous points in two towns, than by any existing highway, then the said court may make an order directing that a notice shall be published in two newspapers of said county for two successive weeks, of the time and place when an application for commissioners shall be made, and at said time and place said court may make an order appointing three commissioners for the purposes hereinafter described, all of which commissioners shall be freeholders residing within the said county." Other sections prescribe the functions, duties and powers of the commissioners, who may have been appointed, and the 6th section provides that "The said commissioners shall ascertain and determine the cost, charges and expense of laying out and opening, constructing and grading the said road and the amount of damages awarded to owners or occupants of property through which the same shall have been laid out for the lands taken, and the amount as so ascertained shall be paid by the town through which said road was continued and constructed and said lands taken. The bonds or obligations of each of said towns for the proportion of such damages, costs, charges or expense so charged to them shall be issued by each of said towns in such sums as are deemed advisable by the respective supervisors thereof, and shall be payable in twenty years from the date thereof. Such bonds shall bear interest at the rate of four per centum per annum and the bonds of each town shall be executed by the supervisors and town clerk thereof and delivered to the said commissioners to be paid out by them at not less than par in liquidation of the said damages, costs, charges and expenses of laying out, opening and constructing the said road or, at their option, to be sold at not less than par and the proceeds thereof applied as aforesaid." Pursuant to the provisions of the act, a petition was presented to the Supreme Court for the appointment of commissioners, for the purpose of constructing a road through the town of Greenburgh, which should, in effect, extend, or continue, Warburton avenue, in the city and town of Yonkers, through a portion of the town of Greenburgh, to the village of Hast-

ings ; both towns being in Westchester county. Such proceedings were, thereupon, had under the act that commissioners were appointed ; who performed the duties devolving upon them and to whom were, eventually, delivered bonds of the defendant, the town of Greenburgh, amounting in the aggregate to the sum of $149,000 of principal, duly made and executed as required by the act. It is not claimed that they were invalid upon any ground to be found in the proceedings relating to their execution and issue, up to the time when the commissioners, to whom they had been delivered, undertook to dispose of them. Under the act, they might pay these bonds out " at not less than par," in liquidation of the damages and costs incurred in constructing the proposed road, or, " at their option," they might sell them " at not less than par " and apply the proceeds for such purposes. What they did was to dispose of them to the brokerage firm of Coffin & Stanton under a contract, whereby the latter obtained them at their face value, or, in technical parlance, " flat ; " that is, without taking into account the interest which had accrued upon them, to the extent of about $700. Coffin & Stanton used the bonds as collateral security in transactions of loans of money made to them by this plaintiff, until they failed ; at which moment the plaintiff held $51,000, in amount, of the bonds, now involved in this action. There is no question but that the plaintiff's title as pledgee, eventually, became that of an owner, with every right of ownership, and it is not claimed that it had any knowledge of the terms upon which the bonds had been disposed of by the commissioners. The argument is, so far as it concerns the validity of the issue of these bonds, that the commissioners' act, in disposing of them to Coffin & Stanton at less than par, or at less than what was actually due upon them, was illegal and, therefore, void ; that the plaintiff was obliged, at its peril, to inquire into the authority of the commissioners to sell them to the purchasers as they did and that, as the bonds never had a legal inception as obligations of the defendant, their payment is unenforceable by the plaintiff, or by any other holder. The

question becomes one, therefore, which requires us to determine whether the feature of invalidity insisted upon by defendant, and thus far decided by the courts below to exist, was jurisdictional, or fundamental, and, therefore, affected the authority to issue the bonds, or their factum as obligations; or whether it was an irregular exercise by the commissioners of their power to dispose of the bonds for the defendant.   That is to say, is the difficulty in some irregular execution of that power; or is it in the creation of the power itself? If the former, then, within the authorities, the irregularity is an unavailing objection to the demand of a holder, who, like the plaintiff, has purchased the bonds in good faith and for value; while, if the latter, the defect is incurable and the issue of the bonds lacks the necessary foundation to make them valid obligations of the defendant.

These bonds were, in their nature, negotiable instruments and were so intended by their maker.   They were intended to pass from hand to hand, and, like all municipal bonds made in such form, to be valid obligations in the hands of any holder.   This the defendant does not dispute; except that it is said, in its behalf, and very properly, that their character of negotiability does not prevent the defense of any invalidity which, under the law authorizing their creation, was of a jurisdictional, or fundamental, nature.   Possessing the character of negotiable instruments, they should be unassailable in the hands of an innocent holder for value, upon any ground relating to the consideration received by the obligor; unless something in the law of their creation compels us to hold otherwise.   Of course, between the immediate parties to the transaction, by which they were given currency, it would be otherwise.

The respondent's argument that there was such a jurisdictional defect rests, in part, upon a construction of the act and, in part, upon the tenor of certain decisions of this court.

When we consider the authorities upon the question, we find a class of cases, of which *Cagwin* v. *Town of Hancock*, (84 N. Y. 532), is typical, where to the validity of the bonds

a fundamental condition was wanting, in the absence of the consents required by the statute to be given by the tax-payers of the town.  That case arose upon a suit brought to enforce payment of the coupons on bonds, issued by the defendant in aid of a railroad, and the defense to the suit, upon the ground that a majority of the taxpayers had not consented in writing to the bonding of the town, was finally upheld in this court.  That was a fact, which, under the act, (Chap. 398, Laws of 1866), was considered to be a fundamental prerequisite to the power of the railroad commissioners, who had been appointed under its provisions, to issue bonds and proof by the affidavit of a town assessor, that the requisite number of taxpayers had consented, was held to be inconclusive and to be ineffectual as a substitute for the fact.  To the proposition that it ought to be conclusive in favor of the *bona fide* holders of the bonds, it was answered that there can be " no *bona fide* holder of bonds, within the meaning of the law applicable to negotiable paper, which have been issued without authority ; " and as all persons are chargeable with knowledge of the statute, " they must see to it that the statute has been complied with before they can, with absolute safety, take the bonds."  In that case the fact was to be a matter of record, the existence of which inquiry would, necessarily, reveal.  There is a number of cases in that class ; of which *Starin* v. *Town of Genoa*, (23 N. Y. 439), and *Town of Venice* v. *Woodruff*, (62 id. 462), may be referred to.  Other cases, involving the validity of issues of town bonds, denote an obvious distinction, which must exist between jurisdictional defects, such as appeared in the *Town of Hancock's* case, and irregularities in the manner in which the commissioners had exercised their power to dispose of the bonds.  In *Brownell* v. *Town of Greenwich*, (114 N. Y. 518), the bonds sued upon were issued in aid of a railroad, under the town bonding act ; but, subsequently, they were repudiated and it was insisted that they were void, because they had been made payable in 20 years, in violation of the provision of the act that they should be payable in 30 years.  It was held that the act of

the commissioners, in that respect, was an irregular perform-
ance of their duty; but that irregularities will not affect the
validity of bonds in the hands of an innocent holder for
value. In that case, as in *Town of Solon* v. *Williamsburgh
Savings Bank*, (114 N. Y. 122), the commissioners appointed
under the act were regarded as, in a sense, agents for the
town, and, within the scope of their authority, their acts
were the acts of the town. In the *Town of Solon* case,
the distinction was clearly pointed out between a case of
the mere irregular execution by the commissioners of their
power and a case where there has been a failure to comply
with the statutory steps, prescribed to be taken in order
to vest the power to create a town liability, as in the *Town
of Hancock's* case. In the early case in this court of *Bank
of Rome* v. *Village of Rome*, (19 N. Y. 20), the distinction
between a failure to comply with jurisdictional requirements
in the creation of municipal bonds, and the failure by the
commissioners to comply with requirements prescribed as to
their sale, in the effect upon the rights of *bona fide* holders,
is exemplified in a marked manner. In that case, a subscrip-
tion by the village to the stock of a railroad company had
been duly approved by the taxpayers and the village issued
its bonds to raise money to pay its stock subscription. The
act provided, however, that the commissioners should have no
power to negotiate or sell the bonds, "except upon the express
condition that $500,000, shall have been first subscribed to the
capital stock of the railroad company," by other parties, and
that the commissioners should make and record a certificate to
that effect and that such subscription had been made, in good
faith and by persons of sufficient ability. The commissioners'
certificate was held to be conclusive evidence, as between the
defendant and *bona fide* holders of the bonds, and their abuse,
or excess, of power, would not affect the rights of the latter.
As it was observed of that case in *Town of Hancock's* case,
"there was nothing more for the village or its taxpayers to
do. Whatever else remained was committed to the railroad
commissioners, named in the act, as agents of the village."

The case of *Village of Fort Edward* v. *Fish*, (156 N. Y. 363), relied upon by the respondent, is in no sense controlling. The question was one between the village and the defendant upon a contract for the sale of its bonds. It was an executory contract, by which the defendant was to become the purchaser of the bonds at their face value, without taking into account the accrued interest, and, as the act prohibited their sale at less than the par value thereof, we held the contract to have been void, not binding upon the village and wholly unenforceable. The purchaser was, of course, chargeable with the knowledge that the act forbade his purchase at less than par and he acquired no rights against the village under the illegal contract. We find, therefore, that the validity of municipal obligations is not affected, in the hands of innocent holders for value, by facts, which concern merely the manner of their passing from their maker into currency and which do not concern the mode of, or the authority for, their creation. *The State of Illinois* v. *Delafield*, (8 Paige, 527), shows that a principle, so obviously right, was very early recognized in this state. The state of Illinois sought to enjoin the defendant from selling, or disposing, of state bonds, purchased from the state's agents at less than par in violation of an express provision of the law, which authorized their creation. The chancellor granted the preventive relief demanded, upon the ground that, in the hands of *bona fide* holders, the bonds would be obligatory upon the state. His decision was affirmed in the Court of Errors, upon similar grounds; "the bonds being," it was said, "negotiable instruments, * * * although void in the hands of the appellant, (Delafield), they will be valid securities in the hands of a *bona fide* holder." (2 Hill, 159.)

Without further reviewing cases, which have so often before been discussed, I think it must be conceded that these bonds were invested with a character of negotiability, which, in the hands of *bona fide* holders, rendered them unassailable upon any ground that did not relate to the authority for their issue, and that, if there was any element of fraud, or irregularity,

in the conduct of the officers, or of the agents, through whom the bonds passed into the channels of business, it is not chargeable to an innocent purchaser. To hold otherwise would be to affect their value as investment securities, by depriving them of the marketable feature of negotiability. If they do not import a consideration duly received by the municipality, when in the hands of an early purchaser, the duty of inquiry might continue for years. And it is to be observed that a duty of inquiry, or of investigation, into the regularity of their sale by, or for, the municipality, under statutory provisions, could be but imperfectly, or unsatisfactorily, performed, if at all, for want of conclusiveness, or of an adequate record. The statute requires no public record of the payment out, or sale, of the bonds. The requirement of such a duty would be to impose an unnecessary burden, as well, upon municipal officers. Nor does a reasonable construction of the act afford support to the contention of the defendant, that these bonds were invalid issues. The act provided that the bonds, to be issued by the town, "shall be executed by the supervisor and town clerk thereof and delivered to the said commissioners to be paid out by them, at not less than par, in liquidation of the said damages, etc., or, at their option, to be sold at not less than par and the proceeds thereof applied as aforesaid." I think it to be quite clear, from this language, that the bonds of the town, upon the occasion arising, being executed by the officers thereof named in the act, were complete as obligations and their delivery to the commissioners had no relation to their creation. That delivery was something required by the act, in order that the commissioners might pay out, or realize upon, the bonds. The town could do no more, with reference to the creation of the bonds. It could deliver them to the commissioners, who would receive them as an agency created by law for a specified purpose. They were the agents of the town, for the purpose of discharging the cost of the work and the claims arising upon the construction of the highway, through the application, or sale, of the bonds, and were responsible to it

for the faithful and proper performance of their duty in that respect. They, merely, held bonds, which the town had issued, until they could be used in paying the indebtedness of the town, and if they disposed of them contrary to the statutory provision as to price, it is obvious that that was a matter, if not of fraud, of a deviation from the authority they possessed; which, for not affecting the factum of the bond, cannot, and should not, be chargeable to the innocent purchaser. Having inquired into the authority for creating the bonds, and into the proceedings taken under the act, how is an intending buyer to be satisfied as to the correctness of the commissioners' disposition of the bonds, with any certainty, or conclusiveness? They may have been faithful, or unfaithful; careless, or mistaken, in their dealing with the bonds; but, after the commissioners had once disposed of them, except as to the immediate purchaser from them, they carried with them to parties, acquiring them in the usual course of business, before maturity, the right to enforce them to the extent that they purported to obligate the defendant. It was observed below, with some emphasis, that "if bonds issued in violation of law can become enforceable because bought without notice, then all constitutional and statutory restrictions are nugatory." A similar observation might have been made with respect to the correctness of the decision in the case of *Bank of Rome* v. *Village of Rome*, (*supra*), or in that of *Brownell* v. *The Town of Greenwich*, (*supra*). But, in such an assertion, sight is lost of the established and far-reaching principle of negotiability, which gives a currency value to such bonds and transfers a title to the *bona fide* purchaser, clear of any defense based upon inadequacy, or failure, of consideration. The assertion fails to discriminate between the situation, or the completeness, of bonds, which have been made, or issued, by the town and, thereupon, delivered to agents, or officers, for application to specified purposes, and the situation subsequently arising, when the latter deviate from the terms of their authority in disposing of them. Finally, it is overlooked that an intending purchaser is without the means, as

through some public record, of ascertaining, with conclusiveness, the price paid by the first taker, or the consideration actually received.

For these reasons, I am unable to agree with the contention of the respondent, that the disregard by the commissioners, who were charged with the custody and negotiation of the bonds in question, of the terms of their authority with respect to the price to be obtained upon their sale affected their validity.

The only question raised as to the constitutionality of the act, under which the bonds were issued, is that the legislature has undertaken to confer non-judicial power upon the Supreme Court of the state and to impose upon that tribunal functions that are purely administrative. In other words, the objection is that the legislature has converted the court "into a commissioner, or commission." By this general law for the construction of highways, in the cases mentioned, while the duty devolved is, in a certain limited sense, administrative, it, nevertheless, imposed judicial functions. The legislature is unrestricted in its power to provide for the construction of public highways, and, from an early day in this state, there has been legislation devolving functions similar in effect to those imposed in this act, which has never been held to be objectionable by this court. To confer upon the court the power to determine as to the necessity for a highway or, under certain conditions, to lay it out, has been usual in this state. It is immaterial, of course, to the point whether it is exercised, in the first instance, upon the application; or upon an appeal from a determination of the commissioners appointed by the court. It was observed in *Commissioners of Highways of Warwick* v. *Judges of Orange County*, (13 Wend. 433), by Mr. Justice NELSON, that "the proceeding by appeal was not intended to be a review of legal questions, or of irregularities that might exist in the preliminary steps, as on a writ of certiorari; but to be an examination of the necessity or propriety of the road, assuming all the previous steps to have been regularly taken." In that case, three of the judges of the county of Orange laid out a road, in the town of Warwick, upon an

appeal from a decision of the commissioners refusing to do so, and the proceedings of the judges were affirmed. (And see *People ex rel. Shaut* v. *Champion,* 16 Johns. 61.)

The present General Highway Law, (Chap. 568, Laws of 1890, secs. 83, 89), confers upon the County Court the power to review a decision of the commissioners as to the necessity for a highway and to confirm, vacate, or modify, their decision in this respect. In *Matter of De Camp,* (151 N. Y. 557), it was held that the decision of the court "determines, finally, the question of the necessity for the proposed highway."

The Condemnation Law, contained in the Code of Civil Procedure, (§§ 3357 to 3384), provides that the court is to try any issue, made upon proceedings for the condemnation of property, or it may refer the same, and, if the petitioner prevails, a judgment shall be entered adjudging that the condemnation of the property described is necessary for the public use.

The General Railroad Act of 1850, (Chap. 140), provided that the necessity for the taking of land for the purposes of a railroad should be determined by the Supreme Court, and in *Matter of New York Central R. R. Co.,* (66 N. Y. 407), it was said by Judge RAPALLO, in the opinion, that " in the case of *Rensselaer & Saratoga Railroad Company* v. *Davis,* (43 N. Y. 137), this court decided that, by the General Railroad Law, the legislature had not delegated to railroad corporations the power of determining what lands were necessary to be appropriated to their use for the purposes of the incorporation, but that, under that statute, it was for the court to determine, upon the application by a railroad company to acquire lands, the question of the necessity and extent of the appropriation, and that the landowner might contest this question. This necessity is, therefore, made a judicial question and, when controverted, it is obvious that the facts must, in some form, be laid before the court to enable it to decide."

That the court acts judicially in performing the functions imposed by this act is apparent from a careful consideration of its language. The act provides, (Sec. 1), that upon presentation of the petition to the Supreme Court, at Special

Term, or to the County Court of the county, " the said court shall carefully consider the facts therein alleged, and if it shall be satisfied that the said highway is necessary for the public welfare and convenience and 'that its continuation and construction will afford a nearer route between two populous points in two towns, than by any existing highway, then the said court may make an order directing that a notice shall be published   *   *   *   of the time and place when an application for commissioners shall be made, and at said time and place said court may make an order appointing the commissioners," etc.   Thus, it is for the court, first, to carefully consider the facts alleged in the petition.   Then, if the court shall be satisfied as to the public necessity for the highway, it *may* order a notice to be published of the time and place for the making of an application for commissioners for the purpose and, upon the return day, it *may* appoint them.   Clearly an opportunity is afforded by the notice for parties to be heard, who are interested in the matter, and quite as clearly is the court not compelled, after hearing the parties upon the application, to proceed with the matter, if its *ex parte* consideration of the facts in the petition is differently affected, as the result of a hearing on notice.

The notice by publication was appropriate to the nature of the case, and was reasonable.   The very object of the adjournment and of the publication was to inform all parties interested and to permit them to come in and to be heard upon any objections to the proceeding.   It was not essential to the constitutionality of the act that the parties interested in the construction of the new highway should have notice of the presentation of the petition, if they had an opportunity to be heard before the court acted in appointing commissioners. Knowledge of the act was chargeable to all parties, the town and the landowners, and the notice by publication sufficiently apprised all of the stated hearing upon the matter.   (See *Matter of Village of Middletown*, 82 N. Y. 196, 201; *Lent v. Tillson*, 140 U. S. 316, 328, and *Spencer* v. *Merchant*, 125 ib. 345.)   The town, if it had any right to notice at all (see

*People ex rel. McLean* v. *Flagg*, 46 N. Y. 401), had all the notice and opportunity to be heard that was necessary.

All that the court does, preliminarily, and all that it does, in the end, is to pass upon the question of the necessity of the highway. The laying out and the construction of the road are duties of the commissioners, whom the court may decide to appoint. The powers were conferred by the act upon the court, as a court, and not upon the justices in a distinct capacity, or office. (*Striker* v. *Kelly*, 7 Hill, 9.) Therefore it is that I am of the opinion, regarding the question in the light of the legislative expressions and of the decisions, that the act is not to be condemned as violative of the Constitution upon the grounds urged, that the court exercises a non-judicial power and that the procedure is non-judicial, for the lack of a judicial hearing, or of a judicial form.

I advise the reversal of the judgment appealed from and that a new trial be ordered, with costs to abide the event.

PARKER, Ch. J. (dissenting). The statute which lies at the foundation of these bonds does not, I think, confer judicial functions upon the court which it purports to empower to take such action as will result in the building of a highway at great expense to a town, without notice to any officer of the town, and, therefore, without granting the town the right to be heard. A more arbitrary, undemocratic use of the funds and credit of a town cannot be conceived of, and it would seem to be unfitting that a court should be made the instrument of working out such a scheme. My objection to the statute, however, rests on the broader ground that it offends against the Constitution of the state in that it attempts to confer upon the judiciary functions not judicial but administrative.

Our government consists of three departments, each with distinct and independent powers, designed to act as a check upon those of the other two co-ordinate branches. The legislative department makes the laws, while the executive executes, and the judicial construes and applies them. Each is confined to its own functions and can neither encroach upon

nor be made subordinate to those of another without violating the fundamental principle of a republican form of government. (*Matter of Davies*, 168 N. Y. 89.)

Ever since Chief Justice MARSHALL wrote his famous opinion in *Marbury* v. *Madison* the responsibility has been assumed and the duty exercised by the courts of determining when statutes offend against the Constitution, and they have without hesitation declared null and void all such enactments. This power, as at all other times, should be strictly exercised when authority forbidden by the Constitution is conferred upon the courts instead of upon the executive or other administrative officers of the state or upon artificial persons created by it. Such resistance should not be made because the court would be relieved of the work or regards it as beneath its dignity to exercise administrative functions, but on the higher ground that the scheme of the Constitution to confine the court to the exercise of judicial functions should be strictly heeded, not only because the Constitution would have it so, but because it is founded in wisdom, as every experienced judge knows.

The readiness with which the suggestion is accepted from time to time, that the judiciary exercise important administrative functions is due to the confidence generally reposed in the judiciary, which in turn is due in no small measure to the fact that it is prohibited from exercising political functions involving the distribution of patronage which quite frequently results in the overriding of the minority in a way that impresses the people as being arbitrary and unjust. In many instances in this state have statutes conferred upon the judiciary administrative functions. In some the statutes have been executed by the courts without protest. In others such statutory schemes have been resisted at the outset. (*People ex rel. Decker* v. *Waters*, 4 Misc. Rep. 1.) That course should have been taken in this case by the Special Term to which the application was made which resulted in the building of a highway, and the issue of the bonds involved in this litigation.

The petition in the matter of that application called the

attention of the court to a statute which authorizes a Special Term of the Supreme Court held in any county in the judicial district — even the remotest one from the county in which the *locus in quo* might be situated — upon the petition of " any twelve or more freeholders residing in any county of this state " — not necessarily in the town to be affected — which petition " must be duly verified by at least one of said freeholders * * * stating that it is necessary for the public welfare and convenience that a highway in any one town in said county shall be continued along and through another town in the same county," and further, that " upon receipt of said petition the said court shall carefully consider the facts *therein alleged*, and if it shall be satisfied that the said highway is necessary for the public welfare and convenience * * * then the said court may make an order directing that a notice shall be published in two newspapers of said county for two successive weeks of the time and place when an application for commissioners shall be made, and at said time and place said court may make an order appointing three commissioners for the purposes hereinafter described, all of which commissioners shall be freeholders residing within the said county." The following sections give to the commissioners power to proceed at once to lay out, open and construct the highway with full authority to ascertain and determine the costs, charges and expenses, including the amount of damages awarded to owners or occupants, and commands that such amount shall be paid by the town through which the road is constructed, and authorizes it to issue bonds or obligations to meet the same.

It will be seen, therefore, that upon the petition of twelve freeholders, verified by one of them, the court without notice to or appearance of any official or inhabitant of the town is permitted to decide, not upon a hearing, but upon " the facts alleged therein " (meaning the petition), whether a highway shall be built, and if from that statement of facts it seems to the court likely that it will be a good thing for the town or county, then it shall give notice to everybody in general, but

no one in particular, of what? That it is open to a reconsideration of the question of the propriety of the building of the road? Not at all. But instead notice that at a given time and place the court will appoint commissioners. The statute does not provide in terms that the town shall have the right to be heard even then; but if it *shall* be heard it will be only as to the names of the persons who are to execute the will of the twelve men, who may be *non-resident* freeholders of the town, as indorsed by the court at Special Term.

Argument cannot be required, I think, in support of the assertion that the action which this statute authorizes the court to take upon the presentation to it of a petition such as is described therein is not judicial, but is administrative.

The Special Term did *not*, however, take the action I have suggested should have been taken in the first instance. And now the question is pressed for decision at a time when the practical effect of a holding that the statute violates the Constitution will be to enable the town to pay for the road of which it is enjoying in part, at least, the benefit, at the expense of this savings bank, and quite naturally it impresses all who consider it as an unfortunate result.

So, in support of the validity of the statute, argument is made by counsel that during almost all of our constitutional history there have been statutes providing in some way for action by the courts in connection with the laying out of highways. But no statutes have been brought to our attention which, like the one in question, permit a Special Term, upon an *ex parte* application, to make an order that a highway be builded. And if there *were* precise precedents for it, and many of them, I should urge that, be there ever so many trespasses against the Constitution, they never ripen into a right to invade it.

As to the other questions discussed in Judge GRAY's opinion, I concur with him.

I advise an affirmance of the judgment.

O'BRIEN, MARTIN and CULLEN, JJ., concur with GRAY, J.; VANN and WERNER, JJ., concur with PARKER, Ch. J.

Judgment reversed, etc.