JOHN H. COYNE, as Sole Surviving Executor of the Last Will and Testament of FRANCIS T. HOLDER, Deceased, Plaintiff, v. TOWN OF GREENBURGH, WILLIAM EDWARD COFFIN et al., Defendants.

(Supreme Court, Westchester Special Term, March, 1920.)

Contracts — provisions of — performance of — highways — pleading — Statute of Limitations — towns — equity — statutes — bonds.

A right of way for the extension of a highway in a town having been duly acquired pursuant to statute (Laws of 1892, chap. 493), town bonds for $149,000, a sum sufficient to pay the land damages and the contract price for the construction work, were delivered to the commissioners appointed pursuant to the statute, who sold them for $49,000 in cash and a credit of $100,000, to a firm which deposited collateral to secure the credit and paid thereon $20,000. As permitted by the contract of sale a substitution of collateral was made by the purchaser. Thereafter, a federal receiver having been appointed for the purchasing firm, it failed to pay the balance of the credit and in consequence the commissioners did not pay the contractors and the work was stopped. An offer of plaintiff's testator to finance the contractors was consented to by the commissioners and upon the completion of the work, pursuant to and in performance of a contract between them, plaintiff's testator paid to the original contractors the amount due them under the highway contract and they assigned to him their claims under said contract against the commissioners or their successors and against the town. In an action in equity commenced by said plaintiff's testator in 1904, asking that the amount due him under the original highway contract, executed in 1893, and which presumptively was under seal, be ascertained, adjudged and determined, the complaint did not allege the presentation to or audit by the town board of the town of the claim sued on, and no evidence was offered to establish any such audit or presentation. Held, that the six year Statute of Limitations pleaded by the town in its answer was no defense.

When plaintiff's testator took the assignment from the original contractors he knew that the original highway con-

tract provided for the payment of the contract price only out of such moneys as should be collected and received by the commissioners from the supervisor of the town, as provided by the statute of 1892, for the cost of the improvement and was only due and payable when such moneys should have been collected and paid to such commissioners, and he also knew that the town had discharged its obligation by the issue and delivery of the bonds to the commissioners and the manner in which they had disposed of them and the collateral which they had taken therefor. *Held*, that it would be inequitable to permit him or his estate to resort to the town, which was a stranger to the transactions of the commissioners, to obtain compensation for the work done under the contract in suit, and a judgment should be directed for the town on the merits, with costs.

The commissioners, by selling the bonds on credit, failed to comply with the provisions of the statute under which they were acting, and as the amount of any claim created by such failure depends upon the amount of the payments made to the contractors and upon the amount that the same will be reduced by resort to the collateral, judgment will be directed in favor of plaintiff against the commissioners for such sum as may be ascertained upon a reference to be due and unpaid under the contract in suit.

ACTION upon a contract.

Caldwell & Masslich (Chester B. Masslich, Charles C. Marshall and Thomas F. Curran, of counsel), for plaintiff.

Frank D. Briggs (Joseph B. Thompson, of counsel), for defendant town of Greenburgh.

John D. O'Connor, for defendants Coyne, Tompkins and Peene.

SEEGER, J. This is an action in equity which was commenced by Francis T. Holder, plaintiff's testator, in the year 1904. The plaintiff Coyne, his surviving executor, was subsequently substituted as party plain-

tiff by an order of the court. The action arises out of a contract between the Warburton avenue extension commission, so called, and Pennell & O'Hern, contractors, under chapter 493, Laws of 1892, for the extension of Warburton avenue, in the town of Greenburgh, from the north line of the city and town of Yonkers to the village of Hastings. Francis T. Holder was the contractors' assignee.

The commissioners were regularly appointed under said act of 1892, and all the proceedings leading up to the awarding of the contract to Pennell & O'Hern were regularly taken. The contract was dated and executed July 28, 1893. The commissioners acquired the right of way for the highway pursuant to the terms of the act. The town of Greenburgh duly issued its bonds to the amount of $149,000, a sum sufficient to pay the land damages and the contract price for the construction of the highway, and delivered the bonds to the commissioners. The commissioners sold the bonds to the firm of Coffin & Stanton for $49,000 cash and a credit of $100,000. Coffin & Stanton deposited with the commissioners certain collateral securities to secure the credit and paid upon the credit $20,000. Part of the original collateral was withdrawn by Coffin & Stanton and other collateral was substituted. Coffin & Stanton failed and the defendant Wickes was duly appointed receiver of the goods, chattels and credits of the said firm by the Circuit Court of the United States for the Southern District of New York, and duly qualified as such receiver. Coffin & Stanton failed to pay the balance of $80,000, which resulted in the failure of the commissioners to pay the contractors and the work was stopped. The original plaintiff, Francis T. Holder, offered to finance the contractors; the commissioners consented thereto, and on the 15th day of May, 1897, said Holder and the defendants

Pennell & O'Hern entered into a contract in writing whereby Pennell & O'Hern agreed to complete the work according to the contract and said Holder agreed to pay all payments to become due to Pennell & O'Hern under the contract for the construction of said extension of Warburton avenue, and Pennell & O'Hern agreed to assign to said Holder any and all claims for the same against the said Warburton avenue extension commission or the members thereof, and their successors, and against the town of Greenburgh. The work was completed by Pennell & O'Hern, and Holder paid them the amounts due according to the terms of the contract, Pennell & O'Hern assigning to him their claims against the commissioners and the defendant town.

The following is the prayer for judgment in the complaint:

"*Wherefore,* plaintiff demands judgment, that the amount due the plaintiff be adjudged and determined, including interest and costs; that the collateral securities hereinabove mentioned be sold under the direction of this court; that the proceeds arising upon the sale be brought into court; that the plaintiff be paid the amount which may be found due him, together with interest and costs, so far as the moneys so applicable from said sale will pay the same, and that the plaintiff have judgment for any deficiency that there may be against the town of Greenburgh, and the defendants John G. Peene, John Besson and James J. Treanor, and that he may have such other and further relief as may be just and equitable."

The answer of the defendant town of Greenburgh sets up the defense of the Statute of Limitations; that the cause of action did not accrue within six years before its commencement; that the plaintiff failed to present his claim for audit to the town board, and that

it was not audited; that the commissioners misapplied the $149,000 bonds and instead of selling them for cash delivered them to Coffin & Stanton on credit; that Coffin & Stanton failed and became insolvent, and that the bonds were never paid for; that plaintiff's recovery is limited by a clause of the contract to moneys collected and received by the commissioners from the supervisors of the town; that the defendant town is a stranger to all the acts of the commissioners, the contractors and the plaintiff, and that the commissioners were not officers, agents, servants or representatives of the defendant town, nor selected, nor appointed, nor commissioned by it.

The trial of the action has been greatly delayed by reason of efforts made by the commissioners to dispose of the collateral securities, and by the death of all of the plaintiff's attorneys, Fettretch, Silkman and Seybel, and by the death of Frank D. Millard, attorney for the defendant town and defendant Tompkins; John G. Peene, one of the commissioners died, Eugene C. Clark, co-executor of Mr. Holder, died leaving the plaintiff, Coyne, sole executor.

The original act of the legislature, chapter 493, Laws of 1892, was repealed April 18, 1893, by chapter 419 of the Laws of 1893, but the repealing statute contained a clause saving the Warburton avenue proceedings in question.

Owing to the death of the above-named attorneys many of the original papers in the case were lost, among them being the original contract, and the same was proved by secondary evidence.

Thomas O'Hern, one of the members of the contracting firm of Pennell & O'Hern, was instrumental in securing the contract between Coffin & Stanton and the Warburton commissioners and the bonds were given to him by the commissioners for delivery, and

he delivered them to Coffin & Stanton who gave a receipt to Commissioner Peene for the same. The original collateral deposited by Coffin & Stanton, according to the contract made by the commissioners with that firm was $29,000 village of Williamsbridge, N. Y., four per cent bonds; $21,000 town of Islip, N. Y., six per cent bonds; $25,000 city of Harriman, Tenn., six per cent bonds; $25,000 city of Ironwood, Mich., six per cent bonds.

As permitted under the Coffin & Stanton contract a substitution of collateral was made. The Westchester Trust Company of Yonkers was appointed receiver of the collateral on October 18, 1905, with authority to take the collateral into its possession and to compromise and adjust and settle all claims arising out of the collateral or the interest therein, upon such terms and conditions as the receiver should deem just and proper; and by further orders of the court it was directed to sell the bonds of the cities of Santa Cruz, Ironwood and Harriman, and apply the proceeds, after the payment of expenses authorized by the court, to the original plaintiff, Holder, which sale and payment were made. The collateral received by the Westchester Trust Company under said orders consisted of $10,000 city of Harriman, Tenn., bonds; $15,000 city of Ironwood, Mich., bonds; $49,000 city of Santa Cruz, Cal., bonds; $15,000 American Debenture Company bonds. All these bonds were sold except the $15,000 American Debenture bonds, which had no value, and from the proceeds of the sales the original plaintiff, Holder, received from the receiver, November 30, 1906, $9,000, and May 31, 1907, $48,723.65.

On January 12, 1894, a formal statement was prepared, executed and sworn to by the three Warburton avenue commissioners, copied in the commissioners' records, and directed to be delivered to the

supervisor of the town of Greenburgh formally ascertaining and determining the actual cost of the construction of the highway to be $109,301.85, this sum being stated to include $89,443.10 for the contractors, Pennell & O'Hern. That determination was confirmed thereafter by the several engineers' certificates, and by the action of the commission itself upon the engineers' certificates.

The first assignment by Pennell & O'Hern to Holder is embraced in the contract and assigns to him their claim of $15,866, together with $1,606.04 interest, damages, costs and allowance directed to be paid by an order of the Supreme Court, and $107.65 costs upon the order affirming said order. Subsequently eight assignments were executed by Pennell & O'Hern to Holder, as follows:

| | | | |
|---|---|---|---|
| May | 15, 1897........ | $17,472 04, interest from October | 31, 1896 |
| | | 107 65, interest from April | 26, 1897 |
| July | 14, 1897........ | 5,974 00, interest from July | 1, 1897 |
| August | 19, 1897........ | 8,160 00, interest from August | 5, 1897 |
| September | 8, 1897........ | 16,000 00, interest from September | 4, 1897 |
| November | 27, 1897........ | 15,000 00, interest from November | 2, 1897 |
| April | 29, 1898........ | 4,000 00, interest from November | 2, 1897 |
| August | 18, 1898........ | 4,000 00, interest from June | 21, 1898 |
| July | 26, 1899........ | 1,443 16, interest from November | 2, 1897 |
| July | 26, 1899........ | 1,000 00, interest from May | 26, 1899 |

The following payments were made by Mr. Holder to Pennell & O'Hern:

| Date of payment (Coyne) | | Date of receipt (Oliver) | | Amount paid (Coyne and Oliver) |
|---|---|---|---|---|
| May | 15, 1897........ | May | 15, 1897........ | $15,650 00 |
| July | 3, 1897........ | July | 14, 1897........ | 5,974 00 |
| August | 17, 1897........ | August | 19, 1897........ | 8,160 00 |
| September | 8, 1897........ | September | 9, 1897........ | 16,000 00 |
| November | 26, 1897........ | November | 27, 1897........ | 15,000 00 |
| April | 27, 1898........ | April | 28, 1898........ | 4,000 00 |
| August | 17, 1898........ | August | 19, 1898........ | 4,000 00 |
| July | 26, 1899........ | July | 26, 1899........ | 2,443 16 |
| | | | | $71,227 16 |

The commissioners paid to Pennell & O'Hern a total of $18,000. The $71,227.16 paid by Holder and the $18,000 paid by the commissioners are all the moneys that were received by Pennell & O'Hern upon the construction contract.

The defense of the Statute of Limitations cannot prevail in this action because it is presumptively established that the contract was under seal and this presumption is not successfully controverted.

The contract recites that the parties "do jointly and severally covenant and agree" and the concluding paragraph recites "the said party of the first part hath caused its corporate seal to be hereunto affixed and these presents to be signed by its president, treasurer and secretary, and the parties of the second and third parts have hereunto set their hands and seals the day and year first above written," and after each of the signatures the letters "L. S." appears. The presumption, therefore, is that the contract was sealed. *Rusling* v. *Union Pipe & Construction Co.,* 5 App. Div. 448; *Atlantic Dock Co.* v. *Leavitt,* 54 N. Y. 35.

An instrument is regarded as sealed for the purpose of the Statute of Limitations if the intent to seal it is shown. *Slade* v. *Squier,* 133 App. Div. 666.

The following cases also give effect to this principle: *Barnard* v. *Gantz,* 140 N. Y. 249; *Wheeler* v. *Reynolds,* 44 App. Div. 571, 573; *Town of Solon* v. *Williamsburgh Savings Bank,* 114 N. Y. 122, 134.

In the opinion of the Appellate Division in the Warburton mandamus proceedings (*People ex rel. Pennell* v. *Treanor,* 15 App. Div. 508), the court said of this contract, at page 514: "it was executed under the corporate seal of the commission."

Another reason why the six year Statute of Limita-

Supreme Court, March, 1920.    [Vol. 110.

tions is no defense to this action is that the action is in equity.

The plaintiff contends that the town of Greenburgh must pay this obligation because the legislature has so enacted. The act provides as follows:

" § 6. The said commissioners shall ascertain and determine the cost, charges and expense of laying out and opening, constructing and grading the said road and the amount of damages awarded to owners or occupants of property through which the same shall have been laid out for the lands taken, and the amount as so ascertained shall be paid by the town through which said road was continued and constructed and said lands taken. The bonds or obligations of each of said towns for the proportion of such damages, costs, charges, or expense so charged to them shall be issued by each of said towns in such sums as are deemed advisable by the respective supervisors thereof, and shall be payable in twenty years from the date thereof. Such bonds  *  *  *  shall be  *  *  * delivered to the said commissioners to be paid out by them at not less than par in liquidation of the said damages, costs, charges and expenses of laying out, opening and constructing the said road, or at their option to be sold at not less than par and the proceeds thereof applied as aforesaid."

The town complied with the terms of this act by issuing the bonds required to be issued and delivering them to the commissioners. Such bonds have been held to be valid obligations of the town. *Citizens Savings Bank* v. *Town of Greenburgh,* 173 N. Y. 215; *Town of Greenburgh* v. *International Trust Co.,* 94 Fed. Repr. 755.

The town did pay the amount " so ascertained," as the statute required. The town was not required to pay to the contractors but to deliver the bonds to the

commissioners, whose duty it was to apply them in payment to the contractors.

Plaintiff also contends that the Warburton Avenue Commission and its members are agents of the town of Greenburgh, and cites the case of *Citizens Savings Bank* v. *Town of Greenburgh,* 173 N. Y. 215, in which case the town sought to evade liability upon the bonds upon the ground that the act of the commissioners in delivering the bonds to the purchasing brokers was void and illegal because they were sold for less than the commissioners were authorized to sell them, they having sold them at their face value without taking into account the interest which had accrued to the extent of about $700, and that the act of the commissioners in so disposing of them at less than what was actually due upon them was illegal and void, and that the court in its opinion said of the commissioners that " they were the agents of the town, for the purpose of discharging the cost of the work and the claims arising upon the construction of the highway, through the application, or sale, of the bonds, and were responsible to it for the faithful and proper performance of their duty in that respect. They merely held bonds which the town had issued until they could be used in paying the indebtedness of the town, and if they disposed of them contrary to the statutory provision as to price, it is obvious that that was a matter, if not of fraud, of a deviation from the authority they possessed; which, for not affecting the factum of the bond, cannot, and should not, be chargeable to the innocent purchaser." The plaintiff in this action, however, occupies an entirely different position from that of an innocent holder of the bonds issued by the town. His testator knew the provisions of the statute requiring the commissioners to sell the bonds at not less than par, and his assignors entered into their contract with the

Supreme Court, March, 1920.     [Vol. 110.

commissioners with that knowledge and knowing that a departure from the procedure enjoined by the statute was a violation of duty and an unlawful action by the commissioners. Further, Pennell & O'Hern participated in the unauthorized and wrongful act of the commissioners in disposing of the bonds. Thomas O'Hern, one of the members of that firm, testified that he had been instrumental in securing the contract between Coffin & Stanton and the Warburton avenue commissioners. While he says that he never gave his consent to the sale of the bonds for part cash and part collateral, he had attended the meetings of the commissioners and was familiar with their acts in reference to the sale of the bonds. The bonds were given to him by the commissioners and he carried and delivered them to Coffin & Stanton, the purchasers. Pennell & O'Hern not only consented to such sale but actually participated therein. O'Hern, the minutes show, was present when the proposition was made and accepted, and it does not appear that he then opposed it. He was also present at other meetings when the Coffin & Stanton deal was discussed. Even conceding that the commissioners were the agents of the town for the purpose of discharging the cost of the work and the claims arising upon the construction of the highway, as was stated by the Court of Appeals in the case of *Citizens Savings Bank* v. *Town of Greenburgh, supra,* Pennell & O'Hern knew that they had exceeded their authority in disposing of the bonds. They could have objected to such disposition, or, at any rate, refused to have participated therein, and if they had so objected they might be considered innocent parties who were not bound by the unauthorized act of the commissioners. Holder, as the assignee of Pennell & O'Hern, cannot be considered in a court of equity as standing in any better position than they

would, or as acquiring any greater rights than those possessed by the latter. Further, it is quite evident that Holder was entirely familiar with the acts of the commissioners. He was the father-in-law of Peene, one of them. He knew the work had been stopped because of the failure of Coffin & Stanton, the purchasers of the bonds, to pay for them. He knew the terms of the act, and that the commissioners had exceeded their authority in disposing of the bonds for less than their face value, and upon credit instead of for cash. He voluntarily interposed and entered into his contract with Pennell & O'Hern to pay them for the completion of the work and took assignments of the various sums due to Pennell & O'Hern under the contract, with full knowledge of the facts.

Even if the commissioners were agents of the town for the purposes mentioned in the act in question to the extent that the bonds issued by the town and delivered to the commissioners became valid obligations of the town, quite a different proposition is involved here, where parties entirely cognizant of the unauthorized and wrongful acts of the commissioners seek to hold the town, not upon the bonds issued by the town, but in addition thereto, to the extent of the damages and losses suffered by reason of these unlawful and unauthorized acts. For such acts such parties should not have redress from the town for towns are not liable for the negligent and wrongful acts of their officers in the absence of statutory provisions making them so. The relation of *respondeat superior* does not exist between the town and its officers. *Short* v. *Town of Orange,* 175 App. Div. 260, 262; *Lorillard* v. *Town of Monroe,* 11 N. Y. 392; *People ex rel. Eckerson* v. *Zundel,* 157 id. 513.

In 28 American and English Encyclopedia of Law (2d ed.), 332, the general principle is stated as fol-

39

lows: "A town or township cannot be made liable either for the negligence or the illegal or unauthorized acts of its officers or agents, except in those cases where the statute expressly provides that it shall be so liable, or where such acts are subsequently ratified by the town."

In *Gardner* v. *Town of Cameron,* 155 App. Div. 750; affd., 215 N. Y. 632, the court said, at page 759: " The creation of an obligation against the town, by way of contract, cannot be founded upon omission of action by the town officials, but must be the result of an affirmative determination to create an obligation in the form and manner provided by statute."

Judge Dillon, in the latest edition of his work on Municipal Corporations, section 1647, refers more in detail to the cases in which corporations are liable civilly for the negligence or want of skill of their agents or servants in the course or line of their employment, by which another who is free from contributory fault is injured. And in that connection the author says at section 1655:

" It may be observed, in the next place, that when it is sought to render a municipal corporation liable for the act of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation. If the corporation appoints or elects them, can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust, and if those duties relate to the exercise of corporate powers, and are for the peculiar benefit of the corporation in its local or special interest, they may justly be regarded as its agents or servants and *the maxim of respondeat superior applies*. But if, on the other hand, they are elected or appointed by the corporation, in obedience to the statute, to perform a public service,

not peculiarly local or corporate, but because this mode of selection has been deemed expedient by the Legislature in the distribution of the powers of the government, if they are independent of the corporation as to the tenure of their office and the manner of discharging their duties, they are not to be regarded as the servants or agents of the corporation, for whose acts or negligence it is impliedly liable, but as independent public or State officers with such powers and duties as the statute confers upon them, and the doctrine of respondeat superior is not applicable."

For these reasons I am satisfied that the Court of Appeals did not intend in the case of *Citizens Savings Bank* v. *Town of Greenburgh, supra,* to hold the town liable for the acts of the commissioners in any other particulars than those involved in that case.

Although the town is not a party to the contract for the construction of the road, the plaintiff seeks to hold it in this action because the legislature has enacted that it must pay pursuant to section 6 of chapter 493 of the Laws of 1892, which has been quoted above.

The amount of bonds which the town can issue is strictly limited to the amounts, as ascertained and determined by the commissioners; no liability beyond that is created by the statute or can be inferred.

Pennell & O'Hern, as well as Holder, knew these provisions of the statute; they knew the extent and the limit of the liability of the town, which was solely for the cost of the land and the construction work as ascertained and determined by the commissioners.

They knew that the bonds could only be paid out by the commissioners, at not less than par, in liquidation of the said liability, or at their option, be sold at not less than par, and the proceeds thereof applied as aforesaid.

The commissioners were not officers of the town. The

town had no voice in their appointment, no control over their acts, nor any power of removal. They were not even residents of the town.

· Section 2 of article X of the Constitution provides that all town officers must be elected or appointed by the electors of the town or town authorities. To hold that the commissioners were officers of the town would be in effect to hold that the act in question was violative of the home rule provision of the Constitution, and to hold that they were agents of the town for whose acts or misfeasance the town would be liable would be an evasion of the home rule provision of the Constitution by doing indirectly what could not be done directly.

While the legislature may, for the purpose of effecting some special object, temporarily designate to other than local officers functions pertaining generally to the locality, the persons so designated do not become local officers. *People ex rel. Commissioners* v. *Oneida Co.*, 170 N. Y. 105; *People ex rel. Kilmer* v. *McDonald*, 69 id. 362; *Astor* v. *City of New York*, 62 id. 567; *City of Syracuse* v. *Hubbard*, 64 App. Div. 587.

In the latter case it was said: '' If the Legislature, in providing for the accomplishment of a particular specific object which it has power to accomplish, designates some person to perform a specific duty that might be performed by a local city or town officer, the fact that such person is charged with that duty does not make him a city or town officer within the meaning of the Constitution so long as the general duty or functions of the local officers are not interfered with.''

In highway matters, the local authorities exercise a very limited authority as to highways, they are mere agents of the state. That is clearly indicated in *People ex rel. Metropolitan St. R. Co.* v. *Tax Commissioners*,

174 N. Y. 417, 430–435, in which the court gave a careful exposition of the home rule provision of the Constitution, and a history of its origin and development, and said: " The principle of home rule is preserved by continuing the right of these divisions to select their local officers, with the general functions which have always belonged to the office. Unless the office, by whatever name it is known, is protected, as the courts have uniformly held, the right to choose the officer would be lost, for with his former functions gone he would not be the officer contemplated by the Constitution, even if the name were retained."

If the opening of this street, in two adjoining towns, pursuant to the provisions of this act of 1892, were merely a local function appertaining solely to local officers, then the whole act of 1892 was unconstitutional, as infringing on the functions of local officers, that is, the town superintendent of highways of the town of Greenburgh, and the corresponding officers of the city of Yonkers; and the only way in which the act can be held constitutional, in this respect, is by giving it the construction that the function as to opening a new highway appertained originally and fundamentally to the state at large, rather than to the local authorities.

If the commissioners in question were to be regarded as taking the place of the town superintendent of highways, as to the construction of the highway in question, that would not make the town liable. If this work had been performed, and if the act of misfeasance shown had been done by the town superintendent of highways, acting under the law governing him, the town would not be liable.

There is no common-law liability on the part of towns. Whatever liability exists must be the result of some statutory duty or obligation, or one arising

under contract obligations which a town has legal authority to enter into.

Section 170 of the Town Law declares what are town charges, subdivision 4 of which provides: '' Every sum directed by law to be raised for any town purpose'' is a town charge. If it may be said that the construction of this highway is a town purpose, the statute has been complied with and the money raised, but there is no authority for raising it the second time.

Coyne, who is the plaintiff in this action as executor of Holder, and who is also a defendant, was for many years the attorney for Holder; he is sole surviving executor of his will. He was also one of the last Warburton avenue commissioners. Peene, now deceased, who was one of the first three commissioners, was Holder's son-in-law; his wife, the present defendant Ava L. Peene, being Holder's only child, and sole residuary legatee under his will; and if plaintiff should recover in this action the money will ultimately be paid to defendant Ava L. Peene, as a part of the residuary estate of Francis T. Holder.

The complaint alleges that Holder and the plaintiff must be considered as admitting the fact that Holder entered into the contract with Pennell & O'Hern upon the express understanding and agreement that the commissioners should hold the collateral securities, pledged by Coffin & Stanton, for the benefit and protection of the plaintiff, and would apply the proceeds arising from the sale of said securities to the repayment to the plaintiff of the moneys due and to become due to Pennell & O'Hern under the contract. The original contract between the commissioners and Pennell & O'Hern provided that the contract price should be paid only out of such moneys as should be collected and received by the party of the first part from the supervisor of the town of Greenburgh, in the county

of Westchester, state of New York, as provided by chapter 493, Laws of 1892, for the cost of said improvement, and only due and payable when such moneys should have been collected and paid to said commissioner. When Holder took the assignment from Pennell & O'Hern he knew of this provision. He also knew that the town had discharged its obligation by the issue of the bonds and their delivery to the commissioners and the manner in which the commissioners had disposed of them, and the collateral which they had taken therefor. There is no reason in equity why he or his estate should now be permitted to resort to the town to obtain compensation for the work done under this contract.

The complaint fails to allege a presentation to or audit by the town board of the town of Greenburgh of the claim sued on, and there was no evidence introduced showing any such audit or presentation. The plaintiff contends that no audit was permissible or necessary since the act creating the commission, chapter 493, Laws of 1892, exempted the claim from the provisions of the general law relating to audit, and superseded such provisions by another method of determining the amount due, and refers to section 6 of the act, which provides as follows: "The said commissioners shall ascertain and determine the cost, charges and expense of laying out and opening, constructing and grading the said road and the amount of damages awarded to owners or occupants of property through which the same shall have been laid out for the lands taken, and the amount as so ascertained shall be paid by the town   *   *   *."

There is no doubt that the statute contemplated that the commissioners should have entire charge of the laying out of the highway, acquiring the rights of way therefor, contracting for the construction thereof,

and the ascertaining and determination of the cost, charges and expense of laying out the same, and of the payment of such cost, charges and expenses from the bonds to be issued by the town, or the proceeds thereof, and no presentation of any claim to the town board of audit was necessary to entitle the contractors to receive payment from the commissioners. But the commissioners failed to comply with the statute and disposed of the bonds by selling them upon credit, contrary to the provisions of the statute. The town issued the bonds, delivered them to the commissioners and furnished them with the means of payment, and it is not the fault of the town that the contractors have not been paid. If the plaintiff has any claim whatever against the town to recover for the cost of the construction of this highway it is a claim created by reason of the fact that the commissioners failed to comply with the terms of the statute in the disposition of the bonds. The commissioners were unable to pay because they had sold the bonds on credit and they have not been paid for them in full. Before the plaintiff can resort to the town to recover any sum in addition to the amount of the bonds which the town delivered to the commissioners, the plaintiff should allege and prove that he presented his claim to the town for audit. The town is a stranger to the transactions of the commissioners. The claim is an unliquidated one. The amount thereof depends upon the amount of the payments made to the contractors and upon the amount that the same will be reduced by resorting to the collateral received by the commissioners from the purchasers of the bonds. The plaintiff recognizes this fact by bringing his action in equity and asking that the amount due the plaintiff should be ascertained, adjudged and determined.

A demand is not liquidated, even if it appears that

something is due, unless it appears how much is due. *Lestienne* v. *Ernst,* 5 App. Div. 373; *Nassoiy* v. *Tomlinson,* 148 N. Y. 326.

It is not necessary to cite authorities for the proposition that a claim against a town cannot be sued upon or enforced until or unless it has been duly presented and acted upon by the town board of audit.

Judgment should be directed for the defendant, town of Greenburgh, on the merits, with costs, and in favor of plaintiff against the defendants commissioners for such sum as may be ascertained to be due and unpaid under the contract, which may be ascertained by reference to ascertain and determine the amount.

Ordered accordingly.